687 S.E.2d 760

**Kimberly THOMAS, Petitioner Below, Appellant**

v.

**Joseph B. MORRIS, Respondent Below, Appellee.**

**No. 35141.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 7, 2009.

Decided Nov. 23, 2009.

Mark A. Toor, Bruce Perrone, Legal Aid of West Virginia, Inc., Charleston, WV, for Appellant.

Wayne King, Law Office of Wayne King, Clay, WV, for Appellee.

Kevin Baker, Sarah K. Brown, Baker & Brown, Charleston, WV, for Amicus Curiae West Virginia Coalition Against Domestic Violence.

McHUGH, Justice.

This case is an appeal of the January 13, 2009, order of the Circuit Court of Clay County, by the petitioner below, Kimberly Thomas. By the terms of this order, the circuit court affirmed the family court's denial of Ms. Thomas's request for issuance of a domestic violence protective order against respondent below, Joseph B. Morris, pursuant to the provisions of Chapter 48, Article

27 of the West Virginia Code. After carefully examining the record [1] and law in light of the arguments before us,[2] we reverse the circuit court order and remand the matter for return to the family court for entry of an appropriate final protective order.

## I.  Factual and Procedural Background

Ms. Thomas and Mr. Morris had been in a twelve-year romantic relationship which Ms. Thomas terminated in December 2007. Mr. Morris attempted to rekindle the relationship beginning in May 2008. Mr. Morris's efforts to renew the relationship included an ever-increasing number of phone calls and voice mail messages to both Ms. Thomas's cell phone and work phone, and unannounced appearances at Ms. Thomas's workplace and at her home. Ms. Thomas maintains that each time she refused to resume the relationship, Mr. Morris's harassing conduct escalated, culminating in the incidents which occurred on July 13, 2008.

Ms. Thomas represented in her petition for a protective order that she feared for her physical safety based on Mr. Morris's conduct on the evening of July 13, 2008, and his intensifying pattern of harassment. According to evidence Ms. Thomas supplied before the family court, she was at her trailer with her then boyfriend, now husband, Ray Blake, on July 13, 2008, when Mr. Morris arrived unexpectedly at around 7:30 p.m. After Ms. Thomas did not answer the door, Mr. Morris did not leave the premises but began moving around the outside of the residence, banging on the doors and windows for a period of approximately one to two hours, and asking Ms. Thomas to come out and talk with him. Ms. Thomas claimed that during this time she witnessed Mr. Morris pick up a three foot long metal bar or pipe and saw him bang it against the trailer. Ms. Thomas maintained that she effectively felt trapped in her home during this time. Ms. Thomas said that her feelings of being trapped in the trailer and fearing for her physical welfare were justified for reasons beyond the demanding behavior Mr. Morris exhibited on that evening. These reasons included: she knew Mr. Morris had obtained a concealed weapons permit and routinely carried a concealed weapon; she believed Mr. Morris' vehicle was blocking her driveway so that she could not leave the scene in her car; and she had no way to call for outside assistance because she did not have a telephone connection in the trailer and cellular coverage was not available where the home was located. Eventually Ms. Thomas and her boyfriend waited until they were sure the Mr. Morris was on the back porch so that they could run out the front door to get to a neighbor's home a quarter mile away to use a phone.

Once at the neighbor's home, Ms. Thomas called a friend for a ride to the friend's home. According to the testimony of both Ms. Thomas and the friend, they returned periodically to the trailer that night so that Ms. Thomas could retrieve her car. Ms. Thomas maintains that she did not immediately seek a protective order because she had hoped the events of the evening would be enough to convince Mr. Morris that she had no intention of renewing the relationship. When Mr. Morris resumed placing unwanted and unanswered phone calls, Ms. Thomas said she realized the events of July 13 were not going to deter Mr. Morris's conduct. At some point Ms. Thomas took up residence in Kanawha County where she filed a petition for a domestic violence protective order out of fear of what else might happen.[3]

1.  The hearing tape from the family court proceeding relied upon by appellate counsel did not appear in the record submitted with the appeal. This Court directed the Clerk to obtain the tape for our review. Once again, we remind appellate counsel of their *duty* to verify the contents of the record accompanying an appeal and to take appropriate steps to assure that this Court has ready access to the record designated by counsel. Rule 8, W.Va. R.App. Proc.

2.  In addition to the briefs of the parties, the West Virginia Coalition Against Domestic Violence has made meaningful contribution to our deliberations in this case by submitting an amicus brief.

3.  Ms. Thomas filed an emergency petition for a domestic violence protective order in the Magistrate Court of Kanawha County on August 1, 2008. A magistrate issued an emergency protective order at that time, and sent the case to the Family Court of Kanawha County for hearing. Because the alleged events occurred in Clay County where both Ms. Thomas and Mr. Morris were living at the time the incidents occurred, the case was transferred by the Kanawha County Family Court to the Clay County Family Court.

Mr. Morris did not deny that Ms. Thomas had ended the relationship, but maintained as a general matter that Ms. Thomas did nothing to deter his more recent advances: she never stopped talking with him on the phone, nor did she refuse his gifts of cards and flowers. She also resumed eating lunch and an occasional dinner with him, both alone and with friends and family. Mr. Morris asserted as well that Ms. Thomas visited him in a Charleston hospital during this period of time and showed physical affection toward him.

As to the events of the evening of July 13, 2008, Mr. Morris admitted going to Ms. Thomas's trailer in order to talk. To refute Ms. Thomas' allegations regarding a metal pipe, Mr. Morris introduced into evidence photographs of the door of the trailer taken after July 13 which he maintained did not show any indication that he or anyone had struck the door with a pipe. He also pointed out that Ms. Thomas did not produce a pipe or metal bar at the hearing. Mr. Morris also asserted that Ms. Thomas was free to leave the trailer during the time in question and could have done so by simply getting into her car and driving around his vehicle which was not completely blocking the driveway. Finally, Mr. Morris contended that Ms. Thomas's actions on that night did not support her claims of being placed in fear of physical harm since she never attempted to contact law enforcement, she kept returning to the area after she left the trailer that night, and she waited several weeks before seeking a protective order.

Upon hearing the case after it was transferred from Kanawha County, the Family Court of Clay County entered an order on September 3, 2008, denying the request for a protective order. Ms. Thomas appealed that order to the circuit court.

By order dated on September 27, 2008, the circuit court reversed the ruling of the family court and remanded the case. The order conveyed the instruction that the family court was to first "decide the case exclusively by determining whether ... [Ms. Thomas] has, by a preponderance of the evidence, proven an incident of domestic violence as defined by West Virginia Code § 48–27–202;

second, the family court shall specifically determine and rule on whether ... [Ms. Thomas] was held, confined or detained against her will...."

No new evidence was taken on remand. After hearing the arguments of counsel, the family court again denied the petition for a protective order. The reason for the denial set forth in the family court order issued October 29, 2008, was: "For the reasons stated upon the record, the Court found Petitioner [, Ms. Thomas,] failed to prove by a preponderance of the evidence that Respondent committed domestic violence or abuse as defined by West Virginia Code § 48–27–202(1) through (5)." Ms. Thomas again appealed to the circuit court.

The second appeal resulted in the circuit court affirming the decision of the family court. In its order of January 13, 2008, the circuit court upheld the rulings of the family court which found that Ms. Thomas had not adequately carried her burden of proving that an act or acts of domestic violence had occurred.

It is from this order that Ms. Thomas filed her appeal; this Court granted review on an expedited basis on September 9, 2009.

## II. Standard of Review

The concerns raised in this case involve our examination of a circuit court's review of a family court order. As established in the syllabus of *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004),

In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Because our examination in this appeal turns on the interpretation of a statute, we further note that "[where the issue on an appeal from the circuit court is clearly a question of law ... involving an interpretation of a statute, we apply a *de novo* standard of review.]" Syl. Pt. 1, in part, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

We proceed with our study of the issues presented in this appeal in light of these standards.

### III. Discussion

■ Ms. Thomas initially maintains that the circuit court applied an incorrect standard of review to the family court's determination of law regarding the requirements of W. Va.Code 48–27–202. She correctly states that a predicate underlying the application of law to fact is the determination of what the law requires. Indeed this Court has held that although "findings of fact [generally] are reviewed for clear error and conclusions of law are reviewed *de novo* ..., ostensible findings of fact, which entail the application of law or constitute legal judgments which transcend ordinary factual determinations[ ] must be reviewed *de novo.*" Syl. Pt. 1, in part, *State ex rel. Cooper v. Caperton,* 196 W.Va. 208, 470 S.E.2d 162 (1996). Unquestionably, Ms. Thomas' arguments raised before the circuit court and renewed here regarding statutory interpretation raise purely legal questions subject to de novo review. Syl. Pt. 1, in part, *Appalachian Power Co. v. State Tax Dept. of West Virginia,* 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute ... presents a purely legal question subject to *de novo* review.").

It is clear from the January 13, 2009, order that the circuit court did not undertake an independent analysis of W. Va.Code 48–27–202(3) and (5). Instead, the circuit court applied an abuse of discretion standard to the family court's findings and conclusions. Nonetheless, whether the application of the incorrect standard of review by the circuit court warrants our reversal in this case requires us to conduct a de novo review of these statutory provisions.

■ The legislative provisions Ms. Thomas asks us to consider are part of the definition of domestic violence contained in W. Va.Code § 48–27–202 (2001) (Repl. Vol. 2009), which provides in its entirety that:

"Domestic violence" or "abuse" means the occurrence of one or more of the following acts between family or household members, as that term is defined in section 27–204: [4]

(1) Attempting to cause or intentionally, knowingly or recklessly causing physical harm to another with or without dangerous or deadly weapons;

(2) Placing another in reasonable apprehension of physical harm;

(3) Creating fear of physical harm by harassment, psychological abuse or threatening acts;

(4) Committing either sexual assault or sexual abuse as those terms are defined in articles eight-b and eight-d, chapter sixty-one of this code; and

(5) Holding, confining, detaining or abducting another person against that person's will.

It is apparent from the plain language of the statute that the Legislature defined five separate acts which independently constitute domestic violence. "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars,* 144 W.Va. 137, 107 S.E.2d 353 (1959).

Ms. Thomas calls into question the meaning of two of these statutorily defined acts, namely "Creating fear of physical harm by harassment, psychological abuse or threatening acts" and "Holding, confining, detaining or abducting another person against that person's will." W. Va.Code § 48–27–202(3) and (5) respectively. We examine these issues in the order presented by Ms. Thomas.

■ Ms. Thomas' first argument centers on the act of domestic violence defined in subsection (5) of West Virginia Code § 48–27–202. Ms. Thomas contends the lower courts inappropriately found that evidence of actual physical restraint was a necessary pre-

---

**4.** West Virginia Code § 48–27–204 (2002) contains the definition of family or household members to whom the statute applies. Although not raised as an issue in this case, we observe that the statute's protection extends to persons who are or were intimate partners, as well as to persons who are or were dating.

requisite to proving the commission of the domestic violence act of "holding, confining, detaining or abducting another person against that person's will." *Id.* The applicable ruling of the circuit court is contained in the following excerpt from the January 13, 2009, order:

11. While the Respondent's behavior was less than ideal, it did not rise to the level of domestic violence. The Respondent was outside of the Petitioner's home for a period of one to two hours, but his behavior was not such that he was *actively trying* to hold, confine, detain or abduct the Petitioner. He was outside her home, attempting to speak with her, and clearly she did not want to speak with the Respondent. However, the Court believes that W. Va.Code § 48–27–202(5) contemplates *more aggressive and direct action.* The Petitioner testified that she was afraid to leave her home while the Respondent was outside, but *she was not physically restrained or confined within her home.* There was no testimony that the Respondent *barred the doors* to the Petitioner's home, or *in any way physically forced* the Petitioner into her home, and *held her* there. The Petitioner's witness, Ray Blake testified that the Petitioner possibly could have gotten her car out of the driveway, and that the Respondent did not have the driveway completely blocked.

Emphasis added. It is readily apparent from the order that the lower court imposed standards which do not appear in this act of domestic violence as it is defined in subsection (5) of West Virginia Code § 48–27–202.

No direct or indirect reference is made in the statute regarding physical force or aggressive action being an element necessary to establish an act of domestic violence pursuant to subsection (5). Moreover, physical imprisonment is hardly the only reason someone may not feel free to leave a situation—depending on the circumstances, fear of retribution, potential harm to others or like controlling factors could also serve the same end. Nothing in the statute places any restrictions on the way one may be held, confined, detained or abducted. Nor do we find any indication in the legislative findings and purposes set forth in the Prevention and Treatment of Domestic Violence Act which lead us to believe that imposing such a requirement would further the Act's stated intent to deter, prevent and reduce incidences of domestic violence.[5] " 'A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.' Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951)." Syl. Pt. 1, *Sowa v. Huffman*, 191 W.Va. 105, 443 S.E.2d 262 (1994). Accordingly, we hold that the act of domestic violence defined in West Virginia Code 48–27–202(5) as "holding, confining, detaining or abducting another person against that person's will" does not require proof of some overt physical exertion on the part of the

---

5. The relevant findings and purposes of the Legislature in enacting the Prevention and Treatment of Domestic Violence Act appear in West Virginia Code § 48–27–101 (2001) (Repl. Vol. 2009) as follows:
(a) The Legislature of this State finds that:
(1) Every person has a right to be safe and secure in his or her home and family and to be free from domestic violence.
* * * * * *
(4) Domestic violence can be deterred, prevented or reduced by legal intervention that treats this problem with the seriousness that it deserves.
(b) This article shall be liberally construed and applied to promote the following purposes:

(1) To assure victims of domestic violence the maximum protection from abuse that the law can provide;
(2) To create a speedy remedy to discourage violence against family or household members with whom the perpetrator of domestic violence has continuing contact;

* * * * * *

(6) To recognize that the existence of a former or on-going familial or other relationship should not serve to excuse, explain or mitigate acts of domestic violence which are otherwise punishable as crimes under the laws of this State.

alleged offender in order to justify issuance of a protective order.

The preponderance of the evidence in this case established that Ms. Thomas had reason to believe that Mr. Morris prevented her from leaving her home on July 13, 2008. As related in the circuit court order, Mr. Morris was outside of Ms. Thomas' home for a period of one to two hours attempting to speak with her despite her refusal to answer the door. Mr. Morris readily admitted during his testimony that he wanted to rekindle a relationship with Ms. Thomas and to this end called Ms. Thomas at home or at work over 150 times between May and July of 2008. Ms. Thomas testified that she repeatedly told Mr. Morris that she had no desire to reestablish a relationship with him. She also testified during the hearing that she stayed in the trailer on July 13, 2008, because Mr. Morris' behavior of beating on the doors and windows of the trailer indicated he was in an agitated state, she knew Mr. Morris routinely carried a concealed weapon for which he had a permit, she believed Mr. Morris' car was blocking her driveway so she could not drive away from the scene, and she was not able to get outside help to either leave the area or to have Mr. Morris removed because she did not have telephone service at the trailer. Although maintaining that Ms. Thomas was free to leave her home on that evening, Mr. Morris never demonstrated that any of Ms. Thomas' assertions were unfounded. As such, the evidence presented established that Mr. Morris committed an act of domestic violence pursuant to West Virginia Code § 48–27–202(5) for which a protective order should have issued.

■ Ms. Thomas' final assignment of error poses a similar evidentiary question relative to another act of domestic violence, defined in West Virginia Code § 48–27–202(3) as "[c]reating fear of physical harm by harassment, psychological abuse or threatening acts." The circuit's court's ruling in the January 13, 2009, order regarding this act of domestic violence provides as follows:

> 12. The Petitioner also contends that the Respondent's acts, "created fear of physical harm by harassment, psychological abuse, or threatening acts,"

as set forth in W. Va.Code § 48–27–202(3). Prior to the events of July 13, 2008, the Respondent had been contacting the Petitioner by phone (Respondent admits he called the Petitioner approximately 150 times between May and July), he also sent her flowers, offered her marriage, and offered his home, all in an attempt to rekindle their relationship. The Petitioner argues that when considering this history, the acts of the Respondent on July 13, 2008, were sufficient to create fear of physical harm in the Petitioner. While the actions of the Respondent throughout the summer of 2008 were undoubtedly "persistent and annoying," as the Family Court found, there is no evidence that the Respondent *ever threatened* the Petitioner *with physical harm* during this time that would lead the Petitioner to reasonably believe the Respondent was *threatening her with physical harm* on July 13, 2008.

Emphasis added. The circuit court's interpretation of the statutory definition of this particular act of domestic violence also goes beyond the literal meaning of the statute. By finding that fear of physical harm due to harassment or psychological abuse cannot be established without some proof of an overt or explicit threat of harm by the alleged perpetrator, the lower court not only disregards the plain language of the statutory provision, but it also ignores the Legislature's directive that the statute be liberally construed to further the purposes of deterring, preventing and reducing domestic violence through legal intervention. W. Va.Code § 48–27–101, n. 4 *supra.*

■ As evidenced by the use of the disjunctive "or" in Subsection (3) of West Virginia Code § 48–27–202, the Legislature has set forth three separate ways that fear of physical harm can be demonstrated: (1) by proof of harassment, (2) by proof of psychological abuse, **or** (3) by proof of threatening acts. Contrary to the circuit court's finding that there must be some demonstration of an actual threat to commit physical harm, the reference in the statute to threatening acts

does not limit such acts to verbal or other overt threats to impose physical harm by an alleged perpetrator. We, therefore, conclude the act of domestic violence defined in West Virginia Code 48–27–202(3) (2001) as "[c]reating fear of physical harm by harassment, psychological abuse or threatening acts" provides that fear of physical harm may be established with (1) proof of harassment, (2) proof of psychological abuse, or (3) proof of overt or covert threatening acts.

The record in this case established that Mr. Morris created fear of physical harm by harassing Ms. Thomas to reestablish a romantic relationship through an unusually large number of phone calls, voice mail messages, visits to Ms. Thomas' home and workplace, invitations to lunch and dinner and extending other offers of sizeable gifts. These acts viewed in conjunction with Ms. Thomas' testimony about Mr. Morris' threatening behavior on July 13, 2008, regarding Mr. Morris blocking her trailer driveway with his car and beating on her trailer doors and windows for one to two hours while insisting that she come outside and talk with him provides ample proof that Ms. Thomas had reason to fear that Mr. Morris may physically harm her. These facts adequately support the issuance of protective order pursuant to West Virginia Code § 48–27–202(3.)

## IV.  Conclusion

As previously established, the circuit court first erred by applying an abuse of discretion standard to its review of questions of law raised on an appeal of a family court order. In addition, we find that application of the deferential standard served to uphold erroneous statements of the law. Therefore, the January 13, 2009, order of the circuit court is reversed. Having concluded that acts of domestic violence pursuant to West Virginia Code 48–27–202(3) and (5) were proven in this case, we reverse and remand the matter for the entry of an appropriate final protection order by the family court. Developments and other changes in circumstances may serve to shape the relief provided.[6]

Consequently, we remand the matter to the family court to ascertain the appropriate relief to be granted in the final protective order.

Reversed and remanded.

---

6.  In addition to the mandatory provisions which must appear in every protective order pursuant to West Virginia Code § 48–27–502 (2001), West Virginia Code § 48–27–503 (2001) also lists other provisions which a court may include in a protective order based upon the circumstances of a particular case.