# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **F.L.**

**No. 25-492** (Mason County CC-26-2024-JA-33)

## MEMORANDUM DECISION

Petitioner Father M.L.[1] appeals the Circuit Court of Mason County's July 8, 2025, order terminating his parental rights to F.L., arguing that the court erred at adjudication when it did not permit him to develop certain evidence and in concluding that he was an abusing parent.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS filed a petition in June 2024, alleging that domestic violence between the parents threatened F.L. with substantial emotional injury and that the petitioner and the mother's reported abuse of "alcohol, drugs, or other controlled substances . . . ha[d] impaired their parenting skills to a degree as to pose an imminent risk to the child[]'s health or safety."[3] The DHS further alleged that the petitioner had failed to protect the child from the mother's drug use. The DHS also noted that the petitioner, who resided out of state but visited the child in West Virginia, was unwilling to develop or implement an in-home safety plan and that the mother had recently obtained a domestic violence protective order ("DVPO") against him.

After several continuances, the circuit court held the petitioner's adjudicatory hearing in March 2025. The mother, the maternal aunt, the maternal grandmother, and the petitioner testified. The mother testified that the petitioner did not live with her and F.L. but visited them periodically. The mother stated that she and the petitioner "always argue[d]" and that he "call[ed] [her] bad names" while standing over her to intimidate her. The mother testified that, during a visit in March 2024, the petitioner threw a cup full of liquid at her and that, sometime later, the mother attempted to take F.L. from the petitioner, who was yelling at her while lying in bed with the then-three-year-old child. According to the mother, the petitioner refused to give her the child and threatened "to

---

[1] The petitioner appears by counsel Paul A. Knisley. The Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General James Wegman. Counsel Tanya Hunt Handley appears as the child's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The proceedings below concerned an additional child not at issue on appeal.

1

burn the house down" if she called law enforcement. The mother testified that she then called her aunt for assistance in removing the petitioner and the paternal grandmother, who was also visiting, from her home. The mother further testified that the petitioner spit in her face a few days later when they met to exchange the child. Shortly after, the mother filed a domestic violence petition against the petitioner. The mother testified that the petitioner then retaliated by filing a domestic violence petition against her, in which he did not seek custody of F.L. The court admitted the mother's domestic violence petition and the resulting DVPO into evidence, which the petitioner's counsel attempted to use to show the mother's purportedly inconsistent statements. The court did not permit the mother to read passages from these court documents into the record. The petitioner's counsel also attempted to admit text messages exchanged between the mother and the paternal grandmother; however, the court sustained the DHS's and the guardian's objections to their relevance. The mother further testified that she and the petitioner had used drugs together in the past, that she had "never really seen him clean," and that she believed he was under the influence of substances during the March 2024 visit because he slept most of the time. The mother's aunt testified that, after receiving a call from the mother, she and her husband went to the home to help remove the petitioner. Upon their arrival, she observed the mother and the petitioner arguing loudly outside; the petitioner was yelling that he would not leave. After de-escalating the situation, the aunt testified that she took the petitioner, the paternal grandmother, and F.L. to a nearby hotel. The maternal grandmother testified to the mother and the petitioner's volatile relationship.

When the petitioner testified, he denied the domestic violence allegations. He admitted to having one argument with the mother during his March 2024 visit, stating that the disagreement occurred after the mother showed him drugs that she wanted him to use with her and stole his money. The petitioner denied that he resisted leaving the mother's home, stating that he "couldn't wait to get out of that house." The petitioner averred that he had not seen the mother use drugs since before F.L. was born and stated that he submitted to a drug screen before his adjudicatory hearing and tested negative for all substances. Finally, the paternal grandmother testified that the March 2024 visit was "great" until she and the petitioner discovered that they were missing money, at which time the petitioner and the mother argued.

In the resulting adjudicatory order, the circuit court concluded that the petitioner and the mother engaged in domestic violence in F.L.'s presence and that the petitioner's "testimony that there was 'never' any domestic violence . . . [was] not credible." The court further found that the petitioner "had a history of illegal substance use," was "aware of [the mother's] continued drug use," and failed to protect F.L. from the same and to provide the care necessary to ensure the child's health, safety, and welfare. The circuit court adjudicated the petitioner as an abusing parent, and F.L. as an abused and neglected child. Given that the petitioner challenges only the circuit court's evidentiary rulings at adjudication and the court's subsequent finding that he was an abusing parent, it is sufficient to note that the circuit court terminated his parental rights to F.L. following a dispositional hearing in June 2025. The petitioner appeals from the dispositional order.[4]

---

[4] The mother successfully completed an improvement period and was reunited with the child. F.L.'s permanency plan is to remain in the mother's custody.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's substantive rulings for abuse of discretion, factual findings are reviewed for clear error, and issues of law are reviewed de novo. Syl. Pt. 1, *In re K.S.*, -- W. Va. --, -- S.E.2d --, 2026 WL 1362143 (W. Va. May 15, 2026). The petitioner asserts that the circuit court erred when it did not permit him to present and develop relevant evidence at adjudication that would have proven the mother's testimony was untruthful.[5] Specifically, he argues that the court erred when it did not permit him to fully cross-examine the mother using what he characterizes as amicable text messages sent by the mother to the paternal grandmother during the March 2024 visit and did not admit these text messages into evidence. The petitioner argued below and now on appeal that the text messages tend to make it less probable that he and the mother argued throughout the visit, contrary to the mother's testimony. Having reviewed the parties' arguments and the record of the proceedings below, we find that the circuit court did not abuse its significant discretion in sustaining the DHS's and the guardian's objections that the content of the text messages between the mother and the paternal grandmother lacked relevance to the ultimate question of whether domestic violence occurred between the mother and the petitioner. *See* Syl. Pt. 3, in part, *In re D.H.*, 252 W. Va. 290, 922 S.E.2d 290 (2024) (quoting Syl Pt. 3, *In re J.S.*, 233 W. Va. 394, 758 S.E.2d 747 (2014)) (noting that the West Virginia Rules of Evidence "allocate significant discretion to the trial court in making evidentiary . . . rulings").

The petitioner further asserts that the court erred by not permitting him to develop testimony regarding inconsistencies between the mother's testimony at adjudication and her statements in the prior domestic violence proceedings, as memorialized in her petition for a protective order and the DVPO. Critically, the court admitted these documents into evidence and considered them in making its factual findings. The court was capable of weighing the mother's prior statements against her current testimony and could have reasonably concluded that additional cross-examination regarding any discrepancies was not necessary to inform its findings of fact. We again find that the circuit court did not abuse its discretion. As such, we find no error in these evidentiary rulings and the petitioner is not entitled to relief.

The petitioner's remaining assignments of error challenge the circuit court's conclusion that he was an abusing parent and that F.L. was an abused and neglected child. First, the petitioner argues that his alleged conduct did not amount to domestic violence and, even if it did, that a single incident of domestic violence cannot support a finding of abuse and neglect.[6] We disagree. West

---

[5] According to Rule 401 of the West Virginia Rules of Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." However, Rule 403 of the West Virginia Rules of Evidence permits courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues, . . . undue delay, wasting time, or needlessly presenting cumulative evidence."

[6] The petitioner cites *In re Lilith H.*, 231 W. Va. 170, 744 S.E.2d 280 (2013), to support his assertion that a single occurrence of domestic violence may not support a parent's adjudication in an abuse and neglect proceeding. We reject this characterization of our decision. In that case, we found that it was error for the circuit court to conclude that the subject children were abused and/or neglected due to their witnessing an "unexpected and isolated" altercation between their

3

Virginia Code § 49-1-201 defines an "[a]bused child," in part, as one "whose health or welfare is being harmed or threatened by . . . [d]omestic violence as defined in § 48-27-202 of this code," and defines an "[a]busing parent," in part, to be "a parent . . . whose conduct had been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect." In turn, West Virginia Code § 48-27-202(3) defines "domestic violence" to mean "the occurrence of one or more" specific acts "between family or household members," including "creating fear of physical harm by harassment, . . . psychological abuse[,] or threatening acts."[7] *See also* Syl. Pt. 6, in part, *Thomas v. Morris*, 224 W. Va. 661, 687 S.E.2d 760 (2009) (holding that "fear of physical harm may be established with (1) proof of harassment, (2) proof of psychological abuse, or (3) proof of overt or covert threatening acts"). At adjudication, the mother testified that she and the petitioner frequently fought in the child's presence and, specifically, that the petitioner had yelled at her, called her derogatory names, threw a cup at her, spit in her face, and threatened to burn down her home. Further, the court found that the petitioner's testimony that no domestic violence occurred was not credible. As the factfinder in abuse and neglect cases, the circuit court is "the entity charged with weighing the credibility of witnesses." *See In re Emily*, 208 W. Va. 325, 339, 540 S.E.2d 542, 556 (2000). As such, we conclude that the circuit court did not err in finding that F.L. was an abused child and that the petitioner was an abusing parent, based on the evidence presented regarding domestic violence.

Finally, the petitioner challenges the circuit court's adjudicatory findings that he had a history of illegal substance use, arguing that there was no credible evidence that he used drugs at the time the petition was filed or that he failed to protect the child from the mother's drug use. The petitioner is correct that a circuit court's adjudicatory findings "must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence." W. Va. Code § 49-4-601(i); *see also In re F.S.*, 233 W. Va. 538, 546, 759 S.E.2d 769, 777 (2014) (noting that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established" (internal citations omitted)). However, a circuit court's findings as to whether a child is abused or neglected "shall not be set aside . . . unless clearly erroneous." Syl. Pt. 1, in part, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). Based on the record, we cannot conclude that the circuit court's adjudicatory findings were clearly erroneous.[8] The mother testified that she had seen the petitioner use drugs in the past and that she suspected he was using drugs at the time of the March 2024 visit because he slept excessively. The petitioner then testified that the mother had shown

---

father and paternal grandfather, noting that "the circumstances *of this particular case* [were] simply too attenuated from the type of household domestic violence from which an abuse and neglect adjudication may derive." *Id*. at 179, 744 S.E.2d at 289 (emphasis added). Regardless of the fact that the circumstances of the instant case are distinguishable, *In re Lilith H.* simply does not stand for the proposition the petitioner suggests.

[7] West Virginia Code § 48-27-204(6) defines "[f]amily or household members" to include persons who "[h]ave a child in common regardless of whether they have ever married or lived together."

[8] "A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* at 225, 470 S.E.2d at 179, Syl. Pt. 1, in part.

4

him drugs during the visit and invited him to use them with her. Despite this, the petitioner did not attempt to obtain custody of F.L. when he filed a domestic violence petition against the mother; nor did he contest or appeal the family court's entry of a DVPO granting the mother temporary custody of the child. The petitioner left F.L. in the mother's care when he returned home. As such, we decline to disturb the circuit court's factual findings regarding the petitioner's conduct, which support its adjudication that he was an abusing parent. *See* W. Va. Code § 49-1-201.

For the foregoing reasons, we find no error in the decision of the circuit court to terminate the petitioner's rights, and its July 8, 2025, order is affirmed.

Affirmed.

**ISSUED:** June 1, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III