**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

September 2013 Term

_____

No. 11-1488

_____

FILED

**September 12, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MANVILLE PERSONAL INJURY SETTLEMENT TRUST;
AMALGAMATED BANK, as TRUSTEE for the
LONGVIEW COLLECTIVE INVESTMENT FUNDS; and
CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM;**
Petitioners Below, Petitioners

v.

**DON L. BLANKENSHIP; BAXTER F. PHILLIPS, JR.;
E. GORDON GEE; RICHARD M. GABRYS;
JAMES B. CRAWFORD; BOBBY R. INMAN;
ROBERT H. FOGLESONG; STANLEY C. SUBOLESKI;
J. CHRISTOPHER ADKINS; M. SHANE HARVEY;
MARK A. CLEMENS; ELIZABETH S. CHAMBERLIN;
and RICHARD R. GRINNAN,**
Contemners Below, Respondents

and

**MASSEY ENERGY COMPANY,
n/k/a ALPHA APPALACHIA HOLDINGS, INC.,**
a Delaware corporation
Nominal Defendant Below

_____

Appeal from the Circuit Court of Kanawha County
The Honorable James C. Stucky, Judge
Civil Action No. 07-C-1333

**AFFIRMED**

_____

Submitted September 4, 2013
Filed: September 12, 2013

A. Andrew MacQueen, Esq.
Charleston, West Virginia
Badge Humphries, Esq.
Motley Rice, LLC
Mount Pleasant, South Carolina
Victoria Antion Nelson, Esq.
Motley Rice, LLC
Morgantown, West Virginia
Counsel for the Petitioners

Brian Glasser, Esq.
Ricklin Brown, Esq.
Christopher S. Morris, Esq.
Bailey & Glasser, LLP
Charleston, West Virginia
Mitchell A. Lowenthal, Esq.
Boaz S. Morag, Esq.
Cleary Gottlieb Steen & Hamilton, LLP
New York, New York
Counsel for Massey Energy Company
n/k/a Alpha Appalachia Holdings, Inc.

A. L. Emch, Esq.
Jonathan L. Anderson, Esq.
Jackson Kelly, PLLC
Charleston, West Virginia
Ronald S. Rolfe, Esq.
New York, New York
Stuart W. Gold, Esq.
Julie A. North, Esq.
Cravath, Swaine & Moore, LLP
New York, New York
Counsel for Respondents
E. Gordon Gee, Richard M. Gabrys,
James B. Crawford, Bobby R. Inman,
Robert H. Foglesong and
Stanley C. Suboleski

Thomas V. Flaherty, Esq.
Tammy R. Harvey, Esq.
Flaherty Sensabaugh Bonasso, PLLC
Charleston, West Virginia
Counsel for Respondents
Don L. Blankenship, Baxter F. Phillips,
Jr.,  J. Christopher Adkins, M. Shane
Harvey, Mark A. Clemens and
Richard R. Grinnan

JUSTICE KETCHUM delivered the opinion of the Court.

JUSTICE DAVIS dissents and reserved the right to file a dissenting opinion.

CHIEF JUSTICE BENJAMIN did not participate in the consideration or decision of this matter.

THE HONORABLE THOMAS E. McHUGH, JUSTICE, sitting by temporary assignment.

**SYLLABUS BY THE COURT**

1.  "'Generally, findings of fact are reviewed for clear error and conclusions of law are reviewed *de novo*. However, ostensible findings of fact, which entail the application of law or constitute legal judgments which transcend ordinary factual determinations, must be reviewed *de novo*.' Syl. Pt. 1, in part, *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 470 S.E.2d 162 (1996)." Syl. pt. 2, *Messer v. Huntington Anesthesia Group, Inc.*, 222 W.Va. 410, 664 S.E.2d 751 (2008).

2.  A fundamental principle of the law of corporations is that a shareholder derivative action is an equitable proceeding in which a shareholder asserts, on behalf of the corporation, a claim that belongs to the corporation rather than the shareholder.

3.  "The local law of the state of incorporation should be applied to determine who can bring a shareholder derivative suit." Syl. pt. 2, *State ex rel. Elish v. Wilson*, 189 W.Va. 739, 434 S.E.2d 411 (1993).

4.  "'In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.' *Warth v. Seldin*, 422 U.S. 490, 498 (1975)." *Findley v. State Farm Mutual Automobile Insurance Company*, 213 W.Va. 80, 576 S.E.2d 807 (2002).

**Ketchum, Justice**:

This appeal is from the September 29, 2011, order of the Circuit Court of Kanawha County which dismissed petitions for civil contempt filed by petitioners Manville Personal Injury Settlement Trust ("Manville Trust"); Amalgamated Bank, as Trustee for the Longview Collective Investment Funds ("Amalgamated Bank"); and California State Teachers' Retirement System ("CalSTRS"). The contempt petitions were filed against the respondents who were former directors and officers of Massey Energy Company ("Massey") prior to the purchase of Massey in 2011 by Alpha Natural Resources. After the purchase, Massey was renamed Alpha Appalachia Holdings and now is a subsidiary of Alpha Natural Resources.

The petitions for civil contempt alleged that the respondents, while officers and directors of Massey, failed to implement certain environmental and mine worker safety standards mandated in a June 30, 2008, order entered in the Circuit Court of Kanawha County. The environmental and safety standards set forth in the 2008 order were part of the settlement of a shareholder derivative action filed against the respondents by Manville Trust on behalf of Massey. Among the petitioners' allegations in the contempt proceeding was the failure of the respondents to implement the safety standards prior to the April 2010 explosion at Massey's Upper Big Branch Mine in which 29 coal miners were killed.

Distinguishing the extensive litigation in other courts surrounding the April 2010 disaster from this matter, the respondents contend that the contempt petitions filed against them solely

1

addressed the relation of Massey shareholders, directors and officers *inter se* and that, as a result, the contempt petitions were peculiar to the internal structure of the corporation. The respondents assert that the petitioners lack standing to pursue contempt proceedings inasmuch as (1) the petitioners no longer own any Massey stock; (2) Massey has been purchased by Alpha Natural Resources; and (3) the respondents were removed by Alpha as corporate directors and officers. The circuit court agreed and granted the respondents' motion to dismiss pursuant to the September 29, 2011, order.[1]

Upon review, this Court is of the opinion that the circuit court was correct in concluding that the petitioners lacked standing to pursue contempt proceedings against the respondents. Therefore, the September 29, 2011, order granting the respondents' motion to dismiss the petitions for civil contempt is affirmed.

## I. Factual Background

Massey was a Delaware corporation with its headquarters in Virginia. Most of its shareholders, including Manville Trust, Amalgamated Bank and CalSTRS, were institutional investors. On July 2, 2007, Manville Trust filed a shareholder derivative action in the Circuit Court of Kanawha County alleging that the Massey board of directors, and various corporate officers,

---

[1] In dismissing the contempt petitions, the circuit court did not reach the merits of the petitioners' allegations concerning noncompliance with the June 2008 order. Instead, the circuit court concluded that the petitioners lacked standing to proceed. Moreover, the circuit court did not have before it the question of liability with regard to the explosion at the Upper Big Branch Mine. Accordingly, it is worth noting that in May 2011, prior to this appeal, this Court denied the petitioners' request for a preliminary injunction seeking to halt the acquisition of Massey by Alpha Natural Resources. In denying the request, this Court clarified that the relief the petitioners sought arose from shareholder derivative claims rather than any "direct claims by miners, widows or children arising out of the Upper Big Branch Mine disaster."

breached their fiduciary duties by failing to make sure that Massey employees were complying with certain environmental and mine worker safety laws and regulations. Manville Trust was the sole plaintiff, and the action was filed "derivatively on behalf of Massey Energy Company." *See W.Va. R. Civ. P.* 23.1 (setting forth requirements for derivative actions by shareholders).[2]

An amended complaint was filed in December 2007. In both complaints, Manville Trust included in the relief sought compensatory damages against "[t]he Individual Defendants and *in favor of the Company* for the amount of damages sustained *by the Company* as a result of the Individual Defendants' breaches of fiduciary duties." (emphasis added) Manville Trust also sought costs and attorney fees.

On May 20, 2008, the parties executed a Stipulation of Settlement of the Manville Trust action which provided for a release of all claims that were or could have been asserted derivatively on behalf of Massey - through May 20, 2008. Excepted from the release was the right of the settling parties, *i.e.*, Manville Trust, "derivatively on behalf of Massey," and the defendants, to enforce the

---

[2] The action was styled *Manville Personal Injury Trust, derivatively on behalf of Massey Energy Company, Plaintiff v. Blankenship, et al., Defendants; Massey Energy Company, a Delaware Corporation, Nominal Defendant*, Civil Action No. 07-C-1333 (Circuit Court of Kanawha County). The complaint alleged: "Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered by the Company as a result of the breaches of fiduciary duty by the Individual Defendants."

We note that, because of changes, over time, in the membership of the Massey board of directors and corporate officers, there are slight discrepancies in the named directors and officers as between the underlying litigation and the contempt petitions. For purposes of this opinion, we will refer to the directors and officers, as to the contempt proceedings now before this Court on appeal, collectively as "respondents."

terms of the settlement. The settlement further provided that its terms were not to be deemed an admission as to the merits of any claim or defense.

The claims released pursuant to the Stipulation of Settlement were in exchange for certain reforms to be made a part of Massey's corporate governance policies relating to company oversight and conduct regarding environmental and mine worker safety standards. The reforms were incorporated into Massey's written Corporate Governance Agreement and were to remain in effect for 5 years, subject to removal if found to be in conflict "with any amendment to the Company's Certificate of Incorporation approved by the Company's shareholders."[3] In the words of the petitioners, the fundamental purpose of the reforms "was to implement a reporting system to deliver environmental and safety compliance information up Massey's corporate structure, from the mines to the Board, and ultimately to the shareholders."

In June 2008, the circuit court conducted a settlement hearing, at the conclusion of which the Judge stated: "I find that the settlement is fair, it's reasonable, it's adequate, and most importantly it's in the best interest of Massey." Thereafter, on June 30, 2008, the circuit court entered an order

---

[3] In addition, the Stipulation of Settlement provided:

> The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties thereto. It is intended by the Settling Parties that no right of any third-party beneficiary shall arise from this Stipulation.

> The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and the Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

4

approving the settlement and dismissing Manville Trust's claims, with prejudice. The order

incorporated the Stipulation of Settlement and the Corporate Governance Agreement. The order also

stated that "[a]ll shareholders of Massey Energy Company are bound by this Judgment."

On April 5, 2010, an explosion occurred at Massey's Upper Big Branch Mine located at

Montcoal, West Virginia. Twenty nine miners were killed. As stated by the petitioners,

investigations subsequent to the disaster found systematic mine safety compliance failures leading

up to the explosion. In the aftermath of the disaster, regulatory proceedings were conducted and

multiple lawsuits were filed in various courts.[4]

## II. Procedural Background

### A. *The First Contempt Petition - filed by Manville Trust*

On April 16, 2010, Manville Trust, the sole movant, filed a petition in the Circuit Court of

Kanawha County seeking a rule to show cause why the individual respondents should not be held

in civil contempt for violating the June 30, 2008, settlement order. The petition for contempt was

filed in the shareholder derivative action settled and dismissed pursuant to the June 30, 2008, order.

---

[4] Among the lawsuits were a number of shareholder derivative actions filed in Delaware. Moreover, Manville Trust filed a second derivative shareholder action in the Circuit Court of Kanawha County. In that action, Manville Trust alleged oversight failures by Massey's board of directors and various corporate officers subsequent to the prior action's Stipulation of Settlement and June 30, 2008, order. In addition to Manville Trust, the plaintiffs in the second shareholder derivative action are Amalgamated Bank and CalSTRS. That action, styled *California State Teachers' Retirement System, et al. v. Blankenship, et al.*, Civil Action No. 10-C-715, is pending before the Circuit Court of Kanawha County. It was not consolidated with the underlying action herein, Civil Action No. 07-C-1333, and was not the basis of the contempt petitions now under consideration before this Court.

The petition included a request for expedited discovery.

The petition for contempt did not assert claims by Manville Trust other than derivatively on behalf of Massey. Manville Trust maintained, *inter alia*, that a mine safety compliance reporting system was integral to the terms of the 2008 order and that, consequently, the failure to include such a report in Massey's 2009 corporate responsibility disclosure suggested a wide-ranging breach of the 2008 order and its incorporated Stipulation of Settlement and Corporate Governance Agreement.

The circuit court issued a rule to show cause on April 22, 2010.

**B.** *The Purchase of Massey by*
*Alpha Natural Resources Through Merger*

On January 28, 2011, an Agreement and Plan of Merger was made in accordance with the law of Delaware wherein an entity known as Mountain Merger Sub, Inc., (created to effect the transaction) would merge with and into Massey, and Massey, renamed Alpha Appalachia Holdings, would become a wholly-owned subsidiary of Alpha Natural Resources. As a result, Alpha Natural Resources, the parent company, would become the sole shareholder of Alpha Appalachia Holdings, both of which were Delaware corporations.

Manville Trust, Amalgamated Bank and CalSTRS challenged the purchase of Massey by Apha Natural Resources by filing a petition for injunctive relief in this Court. On May 31, 2011, this

Court denied the relief sought.  *See* n. 1, *supra*.[5]

The merger went into effect on June 1, 2011, having been approved by both Massey and

Alpha stockholders. Over 99% of Massey shares that were voted were in favor of the merger.  Upon

completion of the transaction, the petitioners ceased to own Massey shares.   The circuit court

subsequently determined:

> On June 1, 2011, Massey and Alpha stockholders gave their respective
> approvals necessary to complete the Merger.  Over 99% of Massey shares that were
> voted were for the Merger.   *   *   *
>
> Pursuant to the Merger Agreement, each issued and outstanding share of
> Massey common stock   .  .  .   was converted into the right to receive 1.025 shares
> of Alpha common stock and $10 in cash.   As a result, Alpha paid Massey
> shareholders consideration that, valued as of the date of the Merger Agreement,
> exceeded $7 billion.
>
> As of the effective time of the Merger, Plaintiffs ceased to own shares in
> Massey.  Alpha became the sole shareholder of Massey, which was named Alpha
> Appalachia Holdings, Inc.
>
> As of the effective time of the Merger, Massey's then-current Board
> [including the individual respondents herein who were Massey directors] was
> replaced by a Board of Directors elected by Alpha, as Massey's sole shareholder.
> The Massey board consists of a sole director (who is not a party here).
>
> Soon after, Alpha Appalachia Holdings's certificate of incorporation was amended to provide

---

[5] The order denying injunctive relief was styled *California State Teachers' Retirement
System, et al., derivatively on behalf of Massey Energy Company, Petitioners v. Blankenship, et
al., and Massey Energy Company, Respondents*, no. 11-0839 (W.Va. - May 31, 2011).  Also
worth noting is that in May 2011, a motion for a preliminary injunction to prevent the merger
between Massey and Alpha was denied by the Court of Chancery of Delaware.  *See In re:
Massey Energy Company Derivative and Class Action Litigation*, 2011 WL 2176479 (Del. Ch. -
May 31, 2011).

that the environmental and mine worker safety operations, formerly performed by Massey, would be conducted in a manner consistent with the programs governing Alpha's mining activities. In conjunction therewith, Alpha Appalachia Holdings's sole director, upon the advice of counsel, determined that a number of policies found in Massey's Corporate Governance Agreement conflicted with the amendment. As a result, the Corporate Governance Agreement, which had been incorporated in the 2008 order, was rendered inoperative.

**C.** *The Second Contempt Petition -*
*filed by Manville Trust, Amalgamated Bank and CalSTRS*

On May 31, 2011, just prior to the effective date of the merger, petitioners Manville Trust, Amalgamated Bank and CalSTRS, "individually and on behalf of all other similarly situated stockholders," filed a civil contempt petition in the Circuit Court of Kanawha County against the individual respondents. Like the first civil contempt petition, this second petition was filed in Civil Action No. 07-C-1333, the Manville Trust shareholder derivative action settled and dismissed pursuant to the June 30, 2008, order. The second contempt petition alleged, *inter alia*, that a failure to implement the mandates of the 2008 order resulted in the disaster at the Upper Big Branch Mine. Moreover, the second petition alleged that the individual respondents were pursuing the merger with Alpha Natural Resources to escape liability for shareholder derivative claims.

This second contempt petition included a demand for compensatory damages in its prayer for relief. The demand for compensatory damages was for petitioners Manville Trust, Amalgamated Bank and CalSTRS and for "the entire class of Massey Energy shareholders" on account of

8

violations of the 2008 order. On June 14, 2011, the circuit court issued a rule to show cause.

In June 2011, the respondents, joined by Alpha Appalachia Holdings on behalf of Massey as nominal defendant, filed a motion to dismiss both civil contempt petitions. The respondents asserted that the petitioners lacked standing to pursue contempt proceedings because, as a result of the merger, (1) the petitioners were no longer Massey shareholders, (2) the respondents were no longer members of the board of directors or in a position to effect compliance with the 2008 order and (3) any remedies for violation of the 2008 order now belong to Alpha Natural Resources and Alpha Appalachia Holdings.[6]

## D. *The September 29, 2011, Order*

Following a hearing, the circuit court entered the order of September 29, 2011, granting the respondents' motion to dismiss the two civil contempt petitions. The circuit court did not reach the merits of the petitioners' allegations concerning noncompliance with the June 2008 order. Instead, the circuit court determined that the dispositive issue was the petitioners' standing to proceed, which, more appropriately, should be resolved under the law of Delaware. Concluding that the petitioners lacked standing, the circuit court stated:

---

[6] In denying the motion for a preliminary injunction to prevent the merger, the Court of Chancery of Delaware noted that, through the purchase, Alpha would acquire along with Massey's assets responsibility for Massey's pre-existing obligations and liabilities, including the aftermath of the Upper Big Branch Mine disaster. The Court of Chancery commented that to divest Alpha of available remedies in that regard and place them with Massey's former shareholders alone would be "problematic as a matter of equity." *In re: Massey Energy Company Derivative and Class Action Litigation*, 2011 WL 2176479 (Del. Ch. - May 31, 2011) at 32, 43.

The underlying litigation here is a derivative litigation, *i.e.*, "on behalf of nominal defendant Massey Energy Company" to remedy damages allegedly suffered by Massey. * * * Because Manville was acting merely as a representative of Massey, no direct enforcement right arose in the underlying proceeding. * * *

[The petitioners] are now *former* Massey shareholders. Thus, even if the 2008 Order represented a determination that Manville could properly prosecute claims on Massey's behalf, Manville ceased to be the proper party to prosecute those claims (and enforce the settlement of those claims) when it surrendered its Massey shares in the Merger that was overwhelmingly approved by Massey's shareholders. Similarly, even if Massey's shareholders had a "legally cognizable interest" in the Settlement because the Settlement was "made in favor of Massey Energy shareholders," they lost that interest when they surrendered their Massey shares. The legal effect of the Merger is no different than if, for example, [the petitioners] had sold their Massey shares in the market, not in connection with the merger. * * *

The Court recognizes that [the petitioners] purported to submit their [second] Petition "individually and on behalf of all other similarly situated shareholders." * * * Since [the petitioners] allege harm only to Massey and do not allege any injury to themselves independent of injury to Massey, their claim is, in fact, derivative. * * * Thus, regardless of whether [the petitioners] *could* assert a direct claim, the Court finds that the claim [the petitioners] have, in fact, asserted is derivative.

The circuit court, therefore, dismissed the two contempt petitions on the basis that the petitioners lacked derivative standing.

The petitioners, Manville Trust, Amalgamated Bank and CalSTRS, ask this Court to reverse the September 29, 2011, order and remand the contempt petitions to the circuit court for further proceedings.

### III. Standards of Review

As confirmed in *Wrenn v. West Virginia Department of Transportation*, 224 W.Va. 424, 427,

10

686 S.E.2d 75, 78 (2009), this Court "generally reviews circuit court orders granting motions to dismiss *de novo*."  Syl. pt. 1, *Lontz v. Tharp*, 220 W.Va. 282, 647 S.E.2d 718 (2007); syl. pt. 1, *Rhododendron Furniture & Design v. Marshall*, 214 W.Va. 463, 590 S.E.2d 656 (2003).

Moreover, in complex cases such as the one now before us, which was decided at the pleading stage, this Court has observed that "'[g]enerally, findings of fact are reviewed for clear error and conclusions of law are reviewed *de novo*.  However, ostensible findings of fact, which entail the application of law or constitute legal judgments which transcend ordinary factual determinations, must be reviewed *de novo*.'  Syl. Pt. 1, in part, *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 470 S.E.2d 162 (1996)."  Syl. pt. 2, *Messer v. Huntington Anesthesia Group, Inc.*, 222 W.Va. 410, 664 S.E.2d 751 (2008).  *Accord Thomas v. Morris*, 224 W.Va. 661, 666, 687 S.E.2d 760, 765 (2009).

## IV. Discussion

### A. *The Underlying Action and Related Contempt Petitions Are Grounded on Derivative Claims*

A fundamental principle of the law of corporations is that a shareholder derivative action is an equitable proceeding in which a shareholder asserts, on behalf of the corporation, a claim that belongs to the corporation rather than the shareholder.  *Siska Revocable Trust v. Milestone Development*, 282 Va. 169, 182, 715 S.E.2d 21, 28 (2011); *Simmons v. Miller*, 261 Va. 561, 573, 544 S.E.2d 666, 674 (2001).  *See Ross v. Bernhard*, 396 U.S. 531, 538, 539 (1970) (In a derivative action, the corporation is the real party in interest; "[t]he heart of the action is the corporate claim."); 12B *Fletcher Cyclopedia of the Law of Corporations* § 5908 (2009) (An invention of equity, a

11

derivative action seeks redress for a wrong to the corporation.).[7]

Here, the 2007 underlying action was filed by Manville Trust "derivatively on behalf of Massey Energy Company." The complaint alleged that Manville Trust brought the action "in the right and for the benefit of the Company to redress injuries suffered and to be suffered by the Company as a result of the breaches of fiduciary duty by the Individual Defendants." The demand for compensatory damages was "for the amount of damages sustained by the Company." That action was settled, subject to the Stipulation of Settlement and June 30, 2008, order which, *inter alia*, provided Manville Trust with the right to enforce the settlement "derivatively on behalf of Massey."

Both contempt petitions which followed the settlement arose from the underlying action and the June 30, 2008, order. As later noted by the circuit court, Manville Trust "styled its original motion for a rule to show cause as part of the underlying 'Derivative Action' and Plaintiffs captioned Massey as a 'nominal defendant', which reflects the corporation's status in a derivative action, in both petitions."

As stated above, the first petition for contempt, filed by Manville Trust, did not assert claims other than derivatively on behalf of Massey. The second contempt petition, filed by Manville Trust, Amalgamated Bank and CalSTRS, purported to allege direct claims by demanding compensatory

---

[7] The principle, thus stated, is consistent with procedural rules for derivative actions under both *W.Va. R. Civ. P.* 23.1 (recognizing an action by shareholders to enforce a right of a corporation, the corporation "having failed to enforce a right which may properly be asserted by it") and *Fed. R. Civ. P.* 23.1 (applicable when shareholders bring a derivative action to enforce a right that the corporation "may properly assert but has failed to enforce").

12

damages for themselves and "the entire class of Massey Energy shareholders." However, as discussed below, no direct claims were alleged in the underlying action. In any event, the circuit court concluded that, since the injury alleged was to Massey, and not to the shareholders themselves, the claims alleged in the second contempt petition were, in fact, derivative.

Upon review, this Court is in agreement with the circuit court. The two contempt petitions, which raised compliance issues with regard to the June 30, 2008, settlement order, while suggesting indirect harm to the petitioners, alleged, in reality, claims against the respondents for the benefit of the former Massey Energy Company. Therefore, as in the underlying action, the two contempt petitions were grounded on derivative claims.

**B.** *This Controversy Involves the Relation of Shareholders and*
*Corporations* **inter se***, and Delaware Law Applies*

In dismissing the contempt petitions, the circuit court did not reach the merits of the allegations concerning noncompliance with the June 2008 order. Instead, the circuit court concluded that the petitioners lacked standing to proceed in view of the merger by which Massey was purchased by Alpha Natural Resources.

The Stipulation of Settlement in the underlying action provided, through the June 2008 order, that the terms of the settlement would be construed and enforced pursuant to the laws of West Virginia.[8] This Court has recognized the presumptive validity of a choice of law provision, (1)

---

[8] The Stipulation of Settlement provided:

13

unless the provision bears no substantial relationship to the chosen jurisdiction or (2) the application of the laws of the chosen jurisdiction would offend the public policy of this State. *Bryan v. Massachusetts Mutual Life Insurance Company*, 178 W.Va. 773, 777, 364 S.E.2d 786, 790 (1987); syl. pt. 1, *General Electric Company v. Keyser*, 166 W.Va. 456, 275 S.E.2d 289 (1981).

In applying the law of Delaware and concluding that the petitioners lacked standing to proceed, the circuit court relied on this Court's opinion in *State ex rel. Elish v. Wilson*, 189 W.Va. 739, 434 S.E.2d 411 (1993), a case holding that an equitable stock ownership was sufficient to confer standing to participate in a shareholder derivative action. The derivative action in *Elish* involved Weirton Steel, a company incorporated in Delaware. Concluding that the issue of standing should be resolved under Delaware law, the opinion observed: "While Weirton Steel is a prominent employer in West Virginia, the battle over who can participate in a shareholder derivative suit is a struggle peculiar to the corporation itself and must be handled as such." 189 W.Va. at 745, 434 S.E.2d at 417. Thus, syllabus point two of *Elish* holds: "The local law of the state of incorporation should be applied to determine who can bring a shareholder derivative suit."

Nothing in the record herein indicates that the 2008 settlement of the underlying derivative shareholder action anticipated the 2011 merger through which Massey was purchased by Alpha

---

This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of West Virginia, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of West Virginia without giving effect to that State's choice of law principles.

14

Natural Resources. In the second contempt petition, however, subsequently filed by Manville Trust, Amalgamated Bank and CalSTRS, an allegation was included to the effect that the individual respondents were pursuing the merger to escape liability for derivative claims. As noted above, a petition for injunctive relief challenging the merger was rejected by this Court on May 31, 2011. In the order denying an injunction, this Court indicated that Delaware law governed the requested relief. Moreover, this Court noted that a similar petition for injunctive relief was pending before the Chancery Court of Delaware, a court of "specialized expertise" in these matters. Since then, the Chancery Court of Delaware denied a motion for a preliminary injunction to prevent the merger between Massey and Alpha. *See In re: Massey Energy Company Derivative and Class Action Litigation*, 2011 WL 2176479 (Del. Ch. - May 31, 2011).

The terms of the 2008 settlement provided that the settlement was to be construed under West Virginia law. However, this contempt proceeding strictly concerns derivative shareholder claims and the viability of those claims in view of the corporate merger.[9] The June 30, 2008, settlement order expressly provided that the settlement was to be enforced derivatively. Massey, now known as Alpha Appalachia Holdings, and Alpha Natural Resources were incorporated in Delaware, and the present controversy requires a sorting out of the derivative claims of the petitioners in complex circumstances involving each company. As stated above, the Agreement and

---

[9] As a result of the merger, the environmental and mine worker safety operations, formerly performed by Massey, were to be conducted in a manner consistent with the programs governing Alpha's mining activities. The Chancery Court of Delaware described Alpha Natural Resources as "a mining company with a good reputation and track record for miner safety and regulatory compliance." *In re: Massey Energy Company Derivative and Class Action Litigation*, 2011 WL 2176479 (Del. Ch. - May 31, 2011) at 2.

15

Plan of Merger, by which Alpha purchased Massey, was made in accordance with the law of Delaware.

Following the holding in *Elish*, this Court concludes that the circuit court correctly determined that the laws of Delaware should be applied to resolve the issue of the petitioners' standing to proceed derivatively on the contempt petitions.

### C. *The Petitioners Failed to Allege that the Merger was Fraudulent or Inequitable*

The purchase of Massey by Alpha Natural Resources began with the January 2011 Agreement and Plan of Merger and went into effect on June 1, 2011, at which time the petitioners ceased to own shares in Massey, and the respondent members of the board of directors were replaced by a board elected by Alpha. Massey's Corporate Governance Agreement was rendered inoperative, and Massey's environmental and mine worker safety operations came under the authority of Alpha and were to be conducted in a manner consistent with programs governing Alpha's mining activities. The circuit court found that over 99% of Massey shares that were voted were for the merger. Each share of Massey common stock was converted into the right to receive 1.025 shares of Alpha common stock and $10 in cash. The circuit court concluded: "Alpha paid Massey shareholders consideration that, valued as of the date of the Merger Agreement, exceeded $7 billion."

As stated above, preliminary challenges to the merger were rejected by this Court and by the Chancery Court of Delaware.

16

In the current matter, Manville Trust, Amalgamated Bank and CalSTRS, suggesting that the merger was fraudulent, alleged in the second contempt petition that the individual respondents pursued the merger simply to escape liability upon the derivative claims. Accordingly, the petitioners contend that the circuit court should have allowed discovery on that issue before considering the respondents' motion to dismiss the contempt petitions.

The circuit court found the fraud issue and discovery request to be without merit. *W.Va. R. Civ. P.* 9(b), requires that, in all averments of fraud, the circumstances constituting fraud "shall be stated with particularity,"[10] The circuit court concluded:

> The entirety of [petitioners'] pleading on this issue amounts to a single sentence in the [second contempt petition]. * * * [Petitioners] have not alleged a single fact, other than that the former directors allegedly faced a substantial likelihood of liability, from which it could be inferred that Defendants were motivated by their potential liability here (or on any other derivative claim). * * *
>
> The Court also recognizes that the more than $7 billion purchase price and the substantial premium delivered to Massey's former shareholders from the Merger is hardly indicative of a transaction undertaken "solely" for liability avoidance.

The circuit court cited *In re: Massey Energy Company Derivative and Class Action Litigation*, 2011 WL 2176479 (Del. Ch. - May 31, 2011), *supra*, which rejected the preliminary challenge to the merger. The Delaware Chancery Court concluded:

> The Merger with Alpha is not a mere reorganization, and given the record

---

[10] Similarly, Rule 9(b) of the *Rules of the Court of Chancery of Delaware* requires that, in all averments of fraud, the circumstances constituting fraud "shall be stated with particularity."

here, it appears highly doubtful that the plaintiffs will be able to show that Massey's directors and officers sought to sell the company to Alpha solely in order to extinguish their potential liability for the pending Derivative Claims. Admittedly, there is a basis to conclude that the Massey Board perceived that the company's ability to prosper independently was impaired by its questionable reputation for worker and environmental safety, and that the best way to secure value was to sell the company at a premium, for stock, to an industry rival with a better reputation in those areas and to allow current Massey stockholders to benefit from the immediate premium and the prospect that the combined asset base would generate solid profits and a higher market multiple under Alpha management. But the record does not suggest that it is likely that the Merger was inspired solely, or even in any material way, by a desire of the Massey directors to extinguish the Derivative Claims or to insulate themselves from liability.

*In re: Massey Energy Company Derivative and Class Action Litigation*, 2011 WL 2176479 (Del. Ch. - May 31, 2011) at 3.

Upon review, this Court concludes that nothing in the pleadings, suggesting that the merger was pretextual, fraudulent or even inequitable, was alleged other than in a cursory manner. No averments were set forth which would satisfy the particularity requirement of *W.Va. R. Civ. P.* 9(b) or the similar requirement under Delaware law. No assertion was made, for example, that the consideration paid for the purchase of Massey was inadequate. This Court is of the opinion, therefore, that the petitioners' issue in this regard failed at the pleading stage and that discovery was not warranted. *See Hager v. Exxon Corporation*, 161 W.Va. 278, 283, 241 S.E.2d 920, 923 (1978) (The strict requirements of Rule 9(b) were included in the procedural rules as an exception to the principles of brevity and simplicity in pleading.)

**D.** *The Petitioners Lack Standing*

18

In *Findley v. State Farm Mutual Automobile Insurance Company*, 213 W.Va. 80, 576 S.E.2d 807 (2002), *cert. denied*, 539 U.S. 942 (2003), this Court restated the general principle expressed in *Warth v. Seldin*, 422 U.S. 490, 498 (1975), that "[i]n essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." 213 W.Va. at 95, 576 S.E.2d at 822. *See also State ex rel. Paul B. v. Hill*, 201 W.Va. 248, 256, 496 S.E.2d 198, 206 (1997) ("Standing" refers to one's ability to bring a lawsuit based on a personal stake in the outcome.).

Here, the circuit court ruled that the petitioners lacked standing under Delaware's "continuous ownership" requirement, citing one of Delaware's leading cases thereon, *Lewis v. Anderson*, 477 A.2d 1040 (Del. 1984). In *Lewis*, the plaintiff filed a shareholder derivative action against the management of Old Conoco. The plaintiff demanded, *inter alia*, that management account for any damages sustained by Old Conoco resulting from management's "golden parachute" agreements. The action was dismissed by the Delaware Chancery Court, however, following a merger of Old Conoco into a wholly-owned subsidiary of Du Pont. As characterized in *Lewis*, the plaintiff ceased to be a shareholder, and Old Conoco was "merged out of existence."

In *Lewis*, the Supreme Court of Delaware affirmed the dismissal. The opinion states:

> In the context of a corporate merger, . . . a derivative shareholder must not only be a stockholder at the time of the alleged wrong and at time of commencement of suit but that he must also maintain shareholder status throughout the litigation. * * * The two recognized exceptions to the rule are: (1) where the

merger itself is the subject of a claim of fraud; and (2) where the merger is in reality a reorganization which does not affect plaintiff's ownership of the business enterprise.

477 A.2d at 1046. *In accord In re: Syncor International Corporation Shareholders Litigation*, 857 A.2d 994, 998 (Del. Ch. - 2004).

The current matter involves an underlying action and related contempt petitions grounded on derivative claims. Looking first to the exceptions under *Lewis*, neither applies. As discussed above, the petitioners failed to sufficiently allege that the merger was fraudulent or inequitable. Moreover, no assertion has been made that, through the right to receive shares of Alpha stock or otherwise, the merger was a mere reorganization which did not affect the petitioners' ownership in the business enterprise. The reorganization exception was never brought into this case. We, therefore, consider the "continuous ownership" requirement articulated in *Lewis* and applied herein by the circuit court.

As already stated, nothing in the record indicates that the settlement of the underlying action anticipated the merger through which Massey was purchased by Alpha Natural Resources. As of the effective date of the merger, June 1, 2011, the petitioners ceased to be shareholders of Massey. Under Delaware law, therefore, the petitioners lost standing to pursue derivative claims on Massey's behalf. Those claims, by virtue of the merger, passed to Alpha. The petitioners respond by asserting that, in the second contempt petition, they alleged direct claims for themselves and "the entire class of Massey Energy shareholders," thus conferring the petitioners with standing independent of the effect of the merger. The basis of those claims was Massey's Corporate Governance Agreement which was to provide environmental and safety compliance information to Massey's shareholders. The Corporate Governance Agreement, however, was rendered inoperative shortly after the merger, and Massey's environmental and safety operations were transferred to Alpha to be conducted in a manner consistent with the programs governing Alpha's mining activities. *See* n. 9, *supra*.

The first petition for contempt, filed by Manville Trust, did not assert claims other than derivatively on behalf of Massey. As the circuit court determined, the second contempt petition, filed by Manville Trust, Amalgamated Bank and CalSTRS, although purporting to allege direct claims, asserted, in reality, derivative claims for injury to Massey flowing from alleged violations of the 2008 settlement order. No direct harm to the shareholders themselves was alleged. Moreover, the 2008 order specified that the settlement would be enforced by the defendants and Manville Trust "derivatively on behalf of Massey." Nevertheless, even if direct claims were alleged in the second contempt petition, direct claims by Massey shareholders were not a part of the underlying shareholder derivative action filed by Manville Trust in circuit court. Accordingly, by raising new claims or independent causes of action, *i.e.*, direct claims, in the second contempt petition, the petitioners are improperly attempting to expand the scope and reach of the original shareholder derivative action and the 2008 settlement. *See Reeves v. Transport Data Communications, Inc.*, 318 A.2d 147, 149 (Del. Ch. 1974) ("If the injury complained of is to the stockholder individually, and

not to the corporation, then the cause of action is individual, not derivative.")

As a result, the petitioners' demand for compensatory damages must also fail. *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004) (Recovery in a derivative suit brought on behalf of the corporation goes to the corporation.); *Chounis v. Laing*, 125 W.Va. 275, 297, 23 S.E.2d 628, 640 (1942) (Subject to exceptions, in a derivative suit recovery is ordinarily paid to the corporation.). Here, the demand for compensatory damages arose from derivative claims, rather than from any purported direct harms to shareholders the petitioners now assert. The direct harms are only theoretical in this proceeding, and there is no retrospective remedy for claims never alleged.

## V. Conclusion

The findings of fact and conclusions of law set forth by the circuit court are amply supported by the evidence and the authorities pertaining to this matter. As the circuit court found, on June 1, 2011, Massey and Alpha stockholders gave their respective approvals necessary to complete the merger. Over 99% of Massey shares that were voted were for the merger. The respondent board of directors was replaced, and the former Massey Energy Company is now owned and operated by Alpha Natural Resources. The underlying action filed and settled by Manville Trust, and the two civil contempt petitions arising therefrom, are purely derivative in nature.

Consequently, under Delaware law, the petitioners are without standing to pursue the two contempt petitions. Therefore, the September 29, 2011, order granting the respondents' motion to dismiss the petitions is affirmed.
.

Affirmed.

21