No. 14-1339 – *California State Teachers' Retirement System et al v. Blankenship et al*

**FILED**

**May 25, 2018**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WORKMAN, C. J., joined by TABIT, Judge, dissenting:

There are few tenets of civil procedure as well-established as the rule of liberality in permitting amendments of a complaint. In an action as substantively and procedurally complex—as well as inevitably protracted—as the case at bar, the equity and necessity of such liberality is made plain. The majority's rejection of petitioners' entirely reasonable attempt to amend their complaint to comport with newly-discovered facts which were previously well beyond their reach smacks of blatant result-orientation. As is evident from even a casual read of the opinion, the majority—rather than confining itself to the allegations viewed in the light most favorable to petitioners—indulges itself in the entire universe of facts adduced to date in limited discovery and in other litigation, draws inferences and makes conclusions thereon, and summarily declares respondents to be the victors. Because the Rule 12(b)(6) stage is indisputably not the appropriate setting for such factual assessments, nor is it this Court's role to sit as a trier of fact, I dissent.

After the tragically well-known explosion at the Upper Big Branch mine owned and operated by Massey Energy Company ("Massey") which killed twenty-nine miners, petitioners filed a derivative shareholder action against Massey directors and officers alleging that they breached their fiduciary duties by failing to comply with worker safety laws. Contemporaneous with this action, other shareholders filed derivative actions in Delaware. Those Delaware derivative actions have continued along

1

a track parallel to the instant action; however, the instant action was stayed for a long period of time pending the federal prosecution of Don Blankenship and the bankruptcy of Alpha Natural Resources Inc. ("Alpha," Massey's successor).

Subsequent to the explosion and petitioners' original complaint in this action, Massey undertook a merger with Alpha. Subsequent to that merger, additional discovery was obtained, along with newly-available evidence from the federal prosecution, allegedly revealing that certain Massey directors and/or officers orchestrated the merger to ensure their most culpable employees (certain mine superintendents) and officers had continued employment and could therefore protect themselves by controlling the investigation into the explosion. Petitioners allege that a higher bidder was discouraged because Alpha had agreed to a "social contract" which involved retention of these culpable employees. Petitioners allege this was all done to limit the personal liability of these individuals with respect to the explosion.

Petitioners now seek to amend their long-ago-filed complaint to assert facts in support of causes of action previously unavailable to them before receipt of this new discovery and information. In particular, petitioners seek to advance a derivative shareholder claim which may survive the merger for damages to the company and a "direct" claim for damages to the shareholders individually. For reasons that the majority attempts to obfuscate, it has determined—*as a matter of fact and law at the 12(b)(6) stage*—that petitioners have neither a viable cause of action nor the right to amend their

complaint to even *allege* such a cause of action. In short, the majority has reviewed the cobbled-together evidence from various proceedings and determined, before even being permitted to amend their complaint, that petitioners cannot win under any circumstance. Making this bold proclamation before full discovery is even conducted seems less like legal analysis and more like reverse-engineering the outcome.

> As this Court has made clear:
>
> Rule 15(a) of the Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." We recognize that the provision quoted should be liberally construed in order to promote substantial justice and, in accordance with the requirement of R.C.P. 1, in such a manner as "to secure the just, speedy, and inexpensive determination of every action." *Cotton States Mutual Insurance Co. v. Bibbee*, 147 W.Va. 786, pt. 6 syl., 131 S.E.2d 745. The Rules of Civil Procedure substantially recognize the preexisting law of this state in relation to liberality in permitting amendments of pleadings and in relation to the scope of the trial court's discretion in permitting or refusing leave to amend.

*Perdue v. S. J. Groves & Sons Co.*, 152 W. Va. 222, 232, 161 S.E.2d 250, 257 (1968). At base, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Attempting to shoe-horn this case in its present iteration into factually and procedurally inapposite decisions, the majority makes much use of the companion cases of *In Re Massey Energy Co. Derivative and Class Action Litig.,* 160 A.3d 484 (Del. Ch.

3

2017) ("*Massey II*"), and its previous opinion in *Manville Pers. Injury Settlement Trust v. Blankenship,* 231 W. Va. 637, 749 S.E.2d 329 (2013) ("*Manville*"). However, neither is remotely informative, much less dispositive. In both cases, the plaintiffs wholly failed to make the specific claims and allegations petitioners herein seek to assert.

First, as to the derivative claim, the majority robotically details at length the black-letter law reiterated in *Manville* which holds that a derivative claim is extinguished by merger, given the requirement of continuity of ownership throughout derivative litigation. Barely acknowledging the fraud exception at issue here, the majority touts the *Massey II*'s court agreement with this general principle and its conclusion that a derivative claim would not lie in that action.

While it is true that merger ordinarily defeats a shareholder derivative claim, there are two well-established exceptions, the pertinent one being when "*the merger itself is the subject of a claim of fraud* being perpetrated merely to deprive shareholders of the standing to bring a derivative action." *Lewis v. Anderson*, 477 A.2d 1040 (Del. 1984) (emphasis added). As previously noted, the plaintiffs in the *Massey II* action *did not plead or argue this exception and expressly waived it*, as recognized by the Delaware Chancery Court:

> [T]he Complaint does not plead acts from which it would be reasonable to infer that either of the exceptions to the continuous ownership rule applies. Indeed, plaintiffs did not argue in their opposition brief that either exception applies (thus waiving the claim) and . . . expressly acknowledged

4

they were *not* contending that the derivative claim survived the Merger.

*Massey,* 160 A.3d at 498 (emphasis in original). Therefore, it is clear that the *Massey II* court did not actually pass on the question of whether the allegations were sufficient to invoke this exception to survive a motion to dismiss pursuant to Rule 12(b)(6).[1] Similarly, this Court in *Manville* found that the complaint "failed to sufficiently allege that the merger was fraudulent or inequitable." 231 W. Va. at 647, 749 S.E.2d at 339. We noted that "nothing in the pleadings, suggesting that the merger was pretextual, fraudulent or even inequitable, was alleged other than in a cursory manner." *Id*. at 646, 749 S.E.2d at 338.

This exception is precisely what petitioners are attempting to amend their complaint to allege in this case: that the merger was a fraud at its inception. Petitioners have alleged a scenario wherein the directors and/or officers orchestrated a merger which not only had the effect of defeating the shareholders' standing for the derivative suit (a benefit which the majority ironically confers as a matter of law), but also allowed the

---

[1] *Manville* was decided in 2013 in an entirely different proceeding involving the Massey defendants. In *Manville,* plaintiffs brought a contempt petition against Massey alleging that it had breached a prior settlement agreement requiring it to enact safety protocols; it also went a step beyond and attempted to ask for damages on the basis that the merger was fraudulent, essentially arguing the continuous ownership fraud exception discussed above, but in the context of a contempt proceeding. This Court found that there was no continuity of ownership due to the merger, therefore the contempt proceeding would not lie. As discussed above, the contempt petition did not sufficiently assert the fraud exception to continuous ownership. This is precisely what petitioners seek to rectify in the instant proceeding.

officers to maintain control over the investigation, shielding themselves from personal criminal and civil liability. Nonetheless, in the lone scrap of analysis dedicated to the issue, the majority doggedly focuses on the fact that the merger yielded a profit to the shareholders, concluding that this fact alone makes petitioners' claim futile. In so doing, the majority makes the *plainly factual* determination that because the shareholders realized a profit the merger could not have been entered into for the sole purpose of protecting the officers and/or directors. While certainly evidence that respondents could argue to defeat the intent requirement of the fraud exception, the profit margin yielded by the merger is by no means dispositive of the issue of the officers' and/or directors' intentions. That determination is a quintessential issue for the finder of fact. It is exceptionally well-understood that dispositive rulings "should not be utilized in complex cases, particularly where issues involving motive and intent are present." *Karnell v. Nutting*, 166 W. Va. 269, 273, 273 S.E.2d 93, 96 (1980).

Secondly, as to the "direct" claims[2], the majority stumbles through the allegations contained in the complaint, reclassifies it as evidence, and concludes that petitioners cannot establish a prevailing set of facts. If further bootstraps the *Massey II*

---

[2] Although less than clear as to the precise construct of their direct claims, ostensibly available to petitioners is what has been referred to as an "inseparable fraud" claim. This claim is well-described as a cause of action where "directors cover massive wrongdoing with an otherwise permissible merger." *Arkansas Teacher Ret. Sys. v. Caiafa,* 996 A.2d 321, 323 (Del. 2010). As such, the focus is not so much on the merits of the merger, but whether wrongful activity necessitated it. In effect, exactly what petitioners are alleging here. The majority's eagerness to declare the profitable nature of the merger dispositive entirely misses the point of this cause of action.

court's conclusion that the "direct" action likewise cannot be maintained because the *Massey II* court found that the facts alleged by those particular shareholders and their counsel in that particular action did not give rise to such a claim. However, it fails to note the language in *Massey II* which clearly identifies the deficiencies in pleading such a cause of action by the plaintiffs in that case. Critically, petitioners' newly adduced evidence is *precisely* the type of evidence the *Massey II* court found lacking. For example, the *Massey II* court noted that plaintiffs in that case failed to present evidence of "'fraudulent conduct that necessitated the merger.'" 160 A.3d at 500. The court noted the plaintiff's complaint was "devoid of any allegations that any of the defendants . . . engaged in misconduct to secure personal benefits for themselves to the detriment of any Massey stockholder separately or individually." *Id.* at 504. Again, this is the exact evidence petitioners wish to amend their complaint to include.

The majority, in fact, makes much use of this newly-discovered evidence, utilizing it to summarily try the case at the Rule 12(b)(6) stage. Again, the majority focuses not on the allegations as construed in the light most favorable to the petitioners, but the respondent-friendly inferences it chooses to indulge based on the information attained to date. Referencing yet again the profit yielded from the merger and the approval of the shareholders of the merger, the majority concludes as a factual matter *before full discovery has even been permitted* that petitioners have produced nothing but "theories" and endorses respondents' "conclusory" and "speculative" characterizations of the allegations. The mere use of these terms makes clear that the majority, in its

7

Herculean effort to parse the considerable, yet still underdeveloped evidence adduced to date, has entirely lost sight of the meaning of the term "allegation" and our pleading standards, even as to fraud claims.[3] More importantly, however, these terms are clearly demonstrative of the majority's refusal to construe the allegations in the light most favorable to petitioner.

Furthermore, based upon the cases cited by the majority, it is likewise clear that it wholly misunderstands or deliberately chooses to mischaracterize petitioners' claims. The majority tersely cites from *In re MeadWestvaco Stockholders Litig.*, 168 A.3d 675 (Del. Ch. 2017) in support of its conclusion that petitioners' "direct" claims are futile. However, in *MeadWestvaco*, the shareholders asserted merely that the directors "'flew blind' [into a merger] and left behind $3 billion of value[.]" *Id.* at 678. Clearly, under such a circumstance, the profit yielded in the merger is entirely pertinent. Here, however, petitioners are not complaining merely that the merger undervalued the company; rather, they are alleging that the entire scheme was an attempt to mitigate civil and criminal liabilities of certain officers and management-level personnel. In such a case, "profit" would seem to have only limited relevance, particularly where petitioners allege the other party to the merger was in some measure complicit in the scheme. Further, the majority's reliance on *In re Crimson Exploration Inc. Stockholder Litigation* is a similar effort in "cherry-picking" legal support. No. 8541–VCP, 2014 WL 5449419

---

[3] To suggest that petitioners' extraordinarily detailed 65-page amended complaint and 102-page proposed second amended complaint lack particularity is laughable.

8

(Del. Ch. Oct. 24, 2014). Like *MeadWestvaco*, *Crimson Exploration* made allegations that the merger consideration was "'extraordinarily low.'" *Id*. at *23. However, the Delaware Chancery Court dismissed the claim in part because it found fatal the shareholders' "fail[ure] to allege that a higher price reasonably was available or that there was another bidder ready and willing to buy Crimson for a higher price." *Id*. at *24. Petitioners, on the other hand, make exactly this allegation in the case at bar.

To suggest that petitioners' proposed amended complaint—on its face—is starkly lacking in sufficient allegations of actionable malfeasance on the part of Massey's officers, given all that is publicly known (and has been federally adjudicated) about this tragic incident is flabbergasting to say the least. If petitioners cannot satisfy the high bar set by the causes of action they seek to plead, that legal issue may be presented and determined at the summary judgment stage or resolved by the jury, as appropriate. To refuse petitioners the opportunity to even conduct discovery on their allegations now that the restraints of the federal prosecution and bankruptcy proceedings have been removed casts a pall over the majority's analysis and potential motivations. "[T]he grant or denial of an opportunity to amend is within the discretion of the [court], but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the [] Rules." *Foman*, 371 U.S. at 182.

As the United States Supreme Court noted regarding abusive refusals of motions to amend, "[i]t is too late in the day and entirely contrary to the spirit of the [] Rules of Civil Procedure for decisions on the merits to be avoided on the basis of [] mere technicalities." *Id.* For the petitioners herein who have endured eight years of litigation, a litany of investigations, prosecutions, and procedural roadblocks, it is indeed far "too late in the day" to reject their attempts to test the merits of their complaint just as they obtain the necessary evidence to present their claims. Petitioners certainly did not endure these hurdles and delays merely to have a majority of this Court sit as a trier of fact and adjudicate their claims on an undeveloped record at the Rule 12(b)(6) stage. Accordingly, I adamantly dissent.