IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2018 Term

FILED
May 25, 2018
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 14-1339

CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM,
AMALGAMATED BANK AS TRUSTEE FOR THE LONGVIEW
COLLECTIVE INVESTMENT FUNDS, MANVILLE
PERSONAL INJURY SETTLEMENT TRUST, DERIVATIVELY ON
BEHALF OF MASSEY ENERGY COMPANY, PHILIP R. ARLIA, AND
BRIAN LYNCH,
Plaintiffs Below, Petitioners,

v.

DON L. BLANKENSHIP; BAXTER F. PHILLIPS, JR.; DAN R. MOORE;
E. GORDON GEE; RICHARD M. GABRYS; JAMES B. CRAWFORD;
BOBBY R. INMAN; ROBERT H. FOGLESONG; STANLEY C. SUBOLESKI;
J. CHRISTOPHER ADKINS; JEFFREY M. JAROSINSKI;
M. SHANE HARVEY; AND MARK A. CLEMENS,
Defendants Below, Respondents,

and

MASSEY ENERGY COMPANY, A DELAWARE CORPORATION,
Nominal Defendant Below, Respondent.

Appeal from the Circuit Court of Kanawha County
Honorable Charles E. King, Jr.
Civil Action No. 10-C-715

AFFIRMED

Submitted: March 6, 2018
Filed: May 25, 2018

Badge Humphries, Esq.
Lewis Babcock L.L.P.
Sullivan's Island, South Carolina
        and
Anne McGinness Kearse, Esq.
Motley Rice LLC
Mount Pleasant, South Carolina
Lead Counsel for Petitioners

Carl N. Frankovitch, Esq.
Frankovitch, Anetkis, Simon,
Decapio & Pearl LLP
Weirton, West Virginia
Counsel for Petitioner Arlia and
Executive Committee Member

Kevin A. Seely, Esq., pro hac vice
Robbins Arroyo, LLP
San Diego, California
Executive Committee Member

Jay N. Razzouk, Esq., pro hac vice
Jay N. Razzouk, Attorney at Law
San Bernardino, California
Executive Committee Member

Alfred G. Yates, Jr., Esq.
Law Offices of Alfred G. Yates, Jr., P.C.
Pittsburgh, Pennsylvania
Counsel for Petitioner Arlia and
Executive Committee Member

A. L. Emch, Esq.
Jonathan L. Anderson, Esq.
Albert F. Sebok, Esq.
Jackson Kelly PLLC
Charleston, West Virginia
Counsel for Respondents Moore,
Gee, Gabrys, Crawford, Inman,
Foglesong, and Suboleski

Thomas V. Flaherty, Esq.
Flaherty Sensabaugh Bonasso PLLC
Charleston, West Virginia
Counsel for Respondents
Blankenship, Phillips, Adkins,
Jarosinski, Harvey, and Clemens

Jeffrey K. Phillips, Esq.
Steptoe & Johnson PLLC
Lexington, Kentucky
        and
Mitchell A. Lowenthal, Esq., pro
hac vice
Boaz S. Morag, Esq., pro hac vice
Cleary Gottlieb Steen &
Hamilton LLP
New York, New York
Counsel for Respondent Massey
Energy Company n/k/a Alpha
Appalachia Holdings, Inc.

JUSTICE LOUGHRY delivered the Opinion of the Court.
JUSTICE DAVIS, deeming herself disqualified, did not participate.
JUDGE TABIT sitting by temporary assignment.
CHIEF JUSTICE WORKMAN and JUDGE TABIT dissent and reserve the right to file dissenting opinions.

**SYLLABUS BY THE COURT**

1. "'A trial court is vested with a sound discretion in granting or refusing leave to amend pleadings in civil actions. Leave to amend should be freely given when justice so requires, but the action of a trial court in refusing to grant leave to amend a pleading will not be regarded as reversible error in the absence of a showing of an abuse of the trial court's discretion in ruling upon a motion for leave to amend.' Syllabus point 6, *Perdue v. S.J. Groves & Sons Co.*, 152 W.Va. 222, 161 S.E.2d 250 (1968)." Syl. Pt. 4, *Bowyer v. Wyckoff*, 238 W.Va. 446, 796 S.E.2d 233 (2017).

2. "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995).

3. "The local law of the state of incorporation should be applied to determine who can bring a shareholder derivative suit." Syl. Pt. 2, *State ex rel. Elish v. Wilson*, 189 W.Va. 739, 434 S.E.2d 411 (1993).

4. "The procedural laws of this state necessarily apply to matters that are brought in the courts of West Virginia." Syl., in part, *State ex rel. Airsquid Ventures, Inc. v. Hummel*, 236 W.Va. 142, 778 S.E.2d 591 (2015).

i

5. "The purpose of the words 'and leave [to amend] shall be freely given when justice so requires' in Rule 15(a) W.Va. R. Civ. P., is to secure an adjudication on the merits of the controversy as would be secured under identical factual situations in the absence of procedural impediments; therefore, motions to amend should always be granted under Rule 15 when: (1) the amendment permits the presentation of the merits of the action; (2) the adverse party is not prejudiced by the sudden assertion of the subject of the amendment; and (3) the adverse party can be given ample opportunity to meet the issue." Syl. Pt. 3, *Rosier v. Garron, Inc.*, 156 W.Va. 861, 199 S.E.2d 50 (1973), *overruled on other grounds by Bradshaw v. Soulsby*, 210 W.Va. 682, 558 S.E.2d 681 (2001).

6. "A fundamental principle of the law of corporations is that a shareholder derivative action is an equitable proceeding in which a shareholder asserts, on behalf of the corporation, a claim that belongs to the corporation rather than the shareholder." Syl. Pt. 2, *Manville Pers. Injury Settlement Tr. v. Blankenship*, 231 W.Va. 637, 749 S.E.2d 329 (2013).

LOUGHRY, Justice:

The petitioners, who were several shareholders of the former company/nominal respondent Massey Energy Company ("Massey" or "the company"), appeal the November 20, 2014, Amended Final Order of the Circuit Court of Kanawha County denying their motion for leave to file a Second Amended Complaint and dismissing their pending Amended Complaint. The petitioners argue that if permitted to once again amend their complaint, they would assert facts sufficient to establish their standing to pursue a derivative shareholder action on behalf of Massey against former corporate directors and officers, even though the petitioners are no longer Massey shareholders. With their proposed Second Amended Complaint, the petitioners also seek to add new claims on behalf of themselves and a putative class alleging that the respondents breached fiduciary duties owed directly to Massey shareholders when negotiating and agreeing to a corporate merger.

The circuit court concluded that under controlling Delaware law, the petitioners lack standing to pursue a derivative shareholder suit. Furthermore, the circuit court found that it would be futile to allow the petitioners to file their proposed Second Amended Complaint. For the reasons set forth below, we find no error in the circuit court's rulings and, accordingly, we affirm.

1

## I. Factual and Procedural Background

On April 5, 2010, a devastating explosion occurred at Performance Coal's Upper Big Branch ("UBB") underground coal mine in Montcoal, West Virginia. Tragically, twenty-nine men working at UBB were killed. Performance Coal was a subsidiary of Massey, a Delaware corporation headquartered in Virginia. In the wake of the explosion, allegations arose of systemic mine safety compliance failures. *See Manville Pers. Injury Settlement Tr. v. Blankenship* ("*Manville*"), 231 W.Va. 637, 640, 749 S.E.2d 329, 332 (2013). Several investigations[1] and lawsuits ensued.

The instant litigation began as a derivative shareholder lawsuit filed in the Circuit Court of Kanawha County on April 15, 2010, by Manville Personal Injury Settlement Trust, a Massey shareholder. Subsequently, the lawsuit was consolidated with derivative actions instituted by other Massey shareholders, including California State Teachers' Retirement System and Amalgamated Bank as Trustee for the Longview Collection Investment Funds, and an Amended Complaint was filed on June 7, 2010.[2] (All of the shareholder plaintiffs are collectively referred to herein as "the petitioners"). In their

---

[1]Entities investigating the explosion included the Federal Mine Safety and Health Administration; the West Virginia Office of Miners' Health, Safety, and Training; the Governor's Independent Investigation Panel; the United Mine Workers of America; and the United States Attorney for the Southern District of West Virginia.

[2]The petitioners' brief explains that suits filed in other West Virginia counties were transferred to Kanawha County for consolidation with this action. As part of the consolidation, an executive committee of lawyers was created.

derivative shareholder claims, the petitioners seek to hold individual members of Massey's then-Board of Directors, as well as certain Massey corporate officers, personally liable to the company based upon the alleged breach of fiduciary duties. At its core, the Amended Complaint asserts that the directors and officers knowingly allowed Massey's employees to disregard worker safety laws, regulations, and procedures, which resulted in the UBB explosion. The individual defendants named in the Amended Complaint are Donald L. Blankenship, Baxter F. Phillips, Jr., Dan R. Moore, E. Gordon Gee, Richard M. Gabrys, James B. Crawford, Bobby R. Inman, Robert H. Foglesong, Stanley C. Suboleski, J. Christopher Adkins, Jeffrey M. Jarosinski, M. Shane Harvey, and Mark A. Clemens (hereinafter collectively "the respondents").

In addition, other Massey shareholders filed similar derivative lawsuits against Massey directors and officers in the Delaware Court of Chancery. *See In re Massey Energy Co. Derivative and Class Action Litig.*, 160 A.3d 484 (Del. Ch. 2017) (*"Massey Energy II"*).[3] The Delaware cases were subsequently consolidated with one another and amended to include direct claims on behalf of the shareholders themselves. *Id.*[4]

---

[3]We refer herein to two separate opinions of the Delaware Court of Chancery issued in that court's consolidated Massey litigation. To avoid confusion, we refer to the Court of Chancery's 2011 opinion denying a motion for a preliminary injunction as "*Massey Energy I*" and its 2017 final decision as "*Massey Energy II*."

[4]Other litigation arising from the UBB explosion included lawsuits on behalf of the estates of the miners who were killed; a securities fraud class action suit brought on behalf of Massey shareholders; a federal criminal prosecution of former Massey Chief Executive

Weeks after the explosion, another company in the coal industry, Alpha Natural Resources, Inc. ("Alpha"), initiated discussions with Massey about a possible corporate merger.[5] Initially, Massey's Board of Directors ("Massey Board") dismissed the idea. However, Alpha approached Massey again in August 2010 with a non-binding proposal offering twenty percent over Massey's then-current stock price of $30.99 per share. The Massey Board rejected this offer as insufficient, but determined that exploration of a merger was warranted. In September 2010, Alpha increased its offer to $41.07 for each share of Massey stock. After an October 2010 article in the Wall Street Journal reported that Massey was reviewing alternatives, Massey received proposals from two additional companies, Arcelor Mittal S.A. and Arch Coal, Inc.[6] Massey's discussions with Alpha were ongoing during this time. In early January 2011, Arch Coal submitted a non-binding offer of $70 per share; the following day, Alpha submitted an offer of $60.51 per share. Later in January, Alpha raised its bid to $65 per share, while Arch Coal *lowered* its bid to $55 per share. Following further negotiations, Alpha and the Massey Board reached a Merger Agreement on January 28, 2011, whereby Alpha would pay $69.33 per share of Massey stock.

Officer Don L. Blankenship; and a non-prosecution agreement between the federal government and Massey's successor company that required payment of millions of dollars in penalties. *See Massey Energy II*, 160 A.3d at 495.

[5]Our information about the merger is derived from the allegations in the petitioners' proposed Second Amended Complaint. These alleged facts are confirmed by the Delaware Court of Chancery in *Massey Energy I* and *II* and by this Court's opinion in *Manville.*

[6]Although the proposed Second Amended Complaint refers to these other companies as Company B and Company C, they are identified in the parties' briefs.

The Merger Agreement between Massey and Alpha was announced on January 29, 2011. The Agreement provided that if Massey's stockholders approved, then on June 1, 2011, Massey would merge with and into a company named Mountain Merger Sub, Inc. that was formed by Alpha solely to effectuate this merger. The surviving corporation would be a wholly-owned subsidiary of Alpha named Alpha Appalachia Holdings, Inc., a Delaware corporation. As part of the Merger Agreement, each outstanding share of Massey common stock would be converted into the right to receive 1.025 shares of Alpha common stock plus $10 in cash (which calculates to $69.33 per share). As proposed, total consideration for the merger would be in excess of $7 billion dollars.

Faced with the potential merger, on May 2, 2011, the petitioners filed a motion with the Circuit Court of Kanawha County for leave to file a Second Amended Complaint that, in addition to re-asserting derivative claims on behalf of the company, sought to add individual and class action claims on behalf of the shareholders themselves.[7] The petitioners' individual and class action claims assert that the respondents violated fiduciary duties owed to the shareholders when negotiating and approving the Merger Agreement at an inadequate price. In their brief, the petitioners report that the parties conducted discovery pertaining to both the safety and the merger issues, but the petitioners desire additional discovery.

---

[7]The proposed Second Amended Complaint also sought to add additional defendants: Massey, Alpha, and Mountain Merger Sub, Inc., as well as two new members of the Massey Board, Robert B. Holland III and Linda J. Welty.

5

On May 16, 2011, the petitioners filed a motion in the circuit court to preliminarily enjoin Massey's merger with Alpha. Unable to obtain a circuit court hearing in the time frame they requested, the petitioners filed an emergency petition with this Court on May 25, 2011, also seeking a preliminary injunction to halt the merger. After recognizing that the motion had not yet been acted upon by the circuit court, that Alpha would be impacted by an injunction but was not named as a party, and that a motion to enjoin the merger was already pending in the Delaware litigation, this Court denied the emergency petition. *See California State Teachers' Ret. Sys. v. Blankenship*, No. 11-0839 (W.Va. May 31, 2011) (memorandum order).

In a lengthy order entered on May 31, 2011, the Delaware Court of Chancery refused to enjoin the merger and refused to create a "litigation trust" in which to maintain the Delaware plaintiffs' derivative claims. *See In re Massey Energy Co. Derivative and Class Action Litig.*, C.A. No. 5430-VCS, 2011 WL 2176479 (Del. Ch. May 31, 2011) (unpublished opinion) ("*Massey Energy I*"). In short, the Court of Chancery concluded that the proposed merger would be beneficial to Massey's shareholders. The court explained, inter alia, that

> [o]n the day the Massey Board unanimously approved the Merger, January 27, 2011, the Merger consideration amounted to a 25% premium over Massey's stock price based on the previous day's closing price of Massey and Alpha stock, a 95% premium over the closing price of Massey stock on October 18, 2010 before it was publicly reported that Massey was engaged in a strategic alternatives review, and even a 27% premium over Massey's stock price the day of the explosion at the Upper Big Branch mine.

6

*Id.* at * 1.

It is undisputed that the merger proposal was thereafter submitted to a stockholder vote, where ninety-nine percent of the Massey shares that were voted were cast in favor of the transaction. Accordingly, the merger became effective June 1, 2011. The company formerly known as Massey became a wholly-owned subsidiary of Alpha and, as the sole shareholder, Alpha replaced Massey's entire Board of Directors with a single director of its choosing.[8] Importantly, upon the merger, the petitioners ceased being Massey stockholders.

In addition to the case sub judice, on May 31, 2011, the petitioners brought a separate legal proceeding in the Circuit Court of Kanawha County seeking to hold Massey corporate directors and officers in contempt for failing to comply with an order entered by the circuit court in 2008 in a *prior* shareholder derivative lawsuit. *See Manville*, 231 W.Va. 637, 639-40, 749 S.E.2d 329, 331-32. The circuit court's 2008 order had required Massey to adopt and follow certain mine safety standards and procedures, but the petitioners asserted that the directors and officers failed to comply, resulting in the UBB explosion. *Id.* The contempt proceeding was dismissed in September 2011 upon the circuit court's conclusion that after the merger, the petitioners were no longer Massey shareholders and, therefore,

---

[8]The director of Alpha Appalachia Holdings is not a party herein.

7

lacked derivative standing under the applicable Delaware law to pursue relief on behalf of the company. *Id.* at 643, 749 S.E.2d at 335. Subsequently, this Court affirmed the circuit court's dismissal of the *Manville* contempt action. *Id.* at 648, 749 S.E.2d at 340.

Meanwhile, on June 24, 2011, the respondents filed a motion in the case at bar asking the circuit court to dismiss the petitioner's Amended Complaint pursuant to Rule 12(b)(6) of the Rules of Civil Procedure. They also opposed the petitioners' motion for leave to file the proposed Second Amended Complaint. The respondents argued that after the merger, the petitioners were no longer Massey shareholders and lacked standing to assert derivative claims, and that amending their complaint a second time would be futile. After briefing and a hearing, the circuit court entered an order on November 14, 2013,[9] that both dismissed the Amended Complaint and denied the motion for leave to file the Second Amended Complaint. The circuit court's only explanation was that the rulings were "[b]ased upon, and for the reasons set forth in," this Court's opinion in *Manville,* 231 W.Va. 637, 749 S.E.2d 329. The petitioners appealed and, on August 26, 2014, we entered an order remanding the case back to the circuit court for entry of an order containing findings of fact and conclusions of law.

---

[9]The circuit court case was delayed so as to not interfere with the work of the United States Attorney in the federal criminal investigation.

Following remand, the petitioners sought a scheduling order for additional briefing and a hearing, but the circuit court concluded that further proceedings would be beyond the scope of the remand. The circuit court did grant the parties the opportunity to submit proposed orders that included findings of fact and conclusions of law. On November 20, 2014, the circuit court entered an Amended Final Order explaining its reasons for dismissing the Amended Complaint and for denying the motion for leave to file the Second Amended Complaint.

In the Amended Final Order, the circuit court explained that upon the consummation of the merger with Alpha, the petitioners were no longer shareholders of Massey and, therefore, had lost standing under the applicable Delaware law to pursue a shareholder derivative suit. The circuit court rejected the petitioners' argument that they retained standing under a fraud exception in Delaware law, concluding that the petitioners could not prove that the merger had been effectuated "solely" to deprive them of derivative standing. Moreover, the circuit court found it would be futile to allow the petitioners to file their Second Amended Complaint. To the extent that the Second Amended Complaint reasserted the derivative claims, the circuit court reiterated that the petitioners had lost shareholder standing and could not prove the fraud exception. With regard to the direct claims that the petitioners sought to add, the circuit court ruled that to be entitled to money damages under Delaware law, the petitioners would need to prove that the officers and directors acted in bad faith to approve a sale of Massey at a materially inadequate and unfair

price. The circuit court found that the proposed Second Amended Complaint did not allege facts to establish that the merger was "materially inadequate" or that any inadequacy was the result of "bad faith" conduct by the respondents. Furthermore, the circuit court recited with approval the findings of the Delaware Chancery Court about the respondents' "reasonable efforts to get the highest price it could from Alpha" and the substantial premium received by shareholders as a result of this merger. *See Massey Energy I*, 2011 WL 2176479, at *4. Finally, the circuit court concluded that it would be prejudicial to the respondents to allow the petitioners to pursue futile claims in another amended complaint.

The petitioners once again appeal to this Court. While this appeal was pending,[10] the Delaware Court of Chancery entered its final order on May 4, 2017, dismissing all of the Delaware plaintiffs' claims–both derivative and direct–in that Massey litigation. *See Massey Energy II*, 160 A.3d 484. Thereafter, we allowed the parties to file supplemental briefs addressing the Delaware court's final ruling. Having been fully briefed and argued, this case is now ready for decision.

## II.  Standards of Review and Choice of Law

There are two parts to the circuit court's Amended Final Order:  the denial of the motion for leave to file a Second Amended Complaint and the dismissal of the pending

---

[10]Due to an automatic stay imposed when Alpha filed for bankruptcy in late 2015, this appeal was held in abeyance for nearly two years.

Amended Complaint. With respect to the denial of leave to amend, we examine the circuit court's ruling for an abuse of discretion:

> "A trial court is vested with a sound discretion in granting or refusing leave to amend pleadings in civil actions. Leave to amend should be freely given when justice so requires, but the action of a trial court in refusing to grant leave to amend a pleading will not be regarded as reversible error in the absence of a showing of an abuse of the trial court's discretion in ruling upon a motion for leave to amend." Syllabus point 6, *Perdue v. S.J. Groves & Sons Co.*, 152 W.Va. 222, 161 S.E.2d 250 (1968).

Syl. Pt. 4, *Bowyer v. Wyckoff*, 238 W.Va. 446, 796 S.E.2d 233 (2017); *accord* Syl. Pt. 1, *Nellas v. Loucas*, 156 W.Va. 77, 191 S.E.2d 160 (1972) ("A motion to amend a pleading is addressed to the sound discretion of the trial court and such discretion will not be disturbed on appeal unless there is a showing of abuse of discretion."). However, we engage in plenary review of the dismissal of the Amended Complaint. "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995). In so doing, we construe the factual allegations in the Amended Complaint in the light most favorable to the petitioners, who were the plaintiffs below. *See id.*, 194 W.Va. at 776, 461 S.E.2d at 522.

Furthermore, it is clear, and uncontested, that Delaware law controls our substantive legal rulings in this appeal. Although the UBB mine was located in West Virginia, the Massey company was incorporated in the State of Delaware pursuant to

11

Delaware law. All of the petitioners' claims, both in the Amended Complaint and in the proposed Second Amended Complaint, are brought by the petitioners in their (now-former) role as shareholders of Massey. These claims contend that Massey corporate directors and officers breached fiduciary duties owed to the company and its shareholders. We recognized in *Manville* that a controversy involving the relationship between shareholders and a corporation is subject to the law of the state of incorporation. *Manville*, 231 W.Va. at 644, 749 S.E.2d at 336. More specifically, "[t]he local law of the state of incorporation should be applied to determine who can bring a shareholder derivative suit." Syl. Pt. 2, *State ex rel. Elish v. Wilson*, 189 W.Va. 739, 434 S.E.2d 411 (1993). Notably, when addressing similar substantive claims in *Manville*, we concluded that Delaware law applies. 231 W.Va. at 644, 749 S.E.2d at 336.

While Delaware law applies to our substantive rulings in this matter, West Virginia law controls our procedures and procedural decisions. "The procedural laws of this state necessarily apply to matters that are brought in the courts of West Virginia." Syl., in part, *State ex rel. Airsquid Ventures, Inc. v. Hummel*, 236 W.Va. 142, 778 S.E.2d 591 (2015); *accord McKinney v. Fairchild Int'l, Inc.*, 199 W.Va. 718, 727, 487 S.E.2d 913, 922 (1997) [quoting the *Restatement (Second) of Conflict of Laws* § 122 (1971) ("A court usually applies its own local law rules prescribing how litigation shall be conducted[.]")]. With these principles in mind, we turn to the parties' arguments.

## III. Discussion

### A. Denial of Motion for Leave to File
### the Proposed Second Amended Complaint

With regard to the petitioner's motion for leave to file their proposed Second Amended Complaint, the pertinent language in Rule 15(a) of the West Virginia Rules of Civil Procedure provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."[11] Expounding upon this provision, our Court has explained:

> The purpose of the words "and leave [to amend] shall be freely given when justice so requires" in Rule 15(a) W.Va. R. Civ. P., is to secure an adjudication on the merits of the controversy as would be secured under identical factual situations in the absence of procedural impediments; therefore, motions to amend should always be granted under Rule 15 when: (1) the amendment permits the presentation of the merits of the action; (2) the adverse party is not prejudiced by the sudden assertion of the subject of the amendment; and (3) the

---

[11]The full text of Rule of Civil Procedure 15(a) provides:

> (a) *Amendments*. – A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be longer, unless the court otherwise orders.

13

adverse party can be given ample opportunity to meet the issue.

Syl. Pt. 3, *Rosier v. Garron, Inc.*, 156 W.Va. 861, 199 S.E.2d 50 (1973), *overruled on other grounds by Bradshaw v. Soulsby*, 210 W.Va. 682, 558 S.E.2d 681 (2001).

In contrast, however, a court may exercise its discretion to deny a motion for leave to amend a complaint where such amendment would *not* lead to a presentation of the case on its merits. In the case at bar, the circuit court concluded that allowing the petitioners' Second Amended Complaint would be futile. As we have previously explained, "'the liberal amendment rules under Rule 15(a) do not require the courts to indulge in futile gestures.'" *Pyles v. Mason County Fair, Inc.*, 239 W.Va. 882, 889, 806 S.E.2d 806, 813 (2017) (quoting *Glick v. Koenig*, 766 F.2d 265, 268-69 (7th Cir. 1985)). In *Pyles*, a man who was physically beaten by third parties while attending a county fair sued the fair's organizing board. Subsequently, he unsuccessfully sought to amend his complaint to add the county commission as a defendant; he alleged that the fair board and the county commission engaged in a "joint venture" to hold the fair, thus the commission could be held vicariously liable for his injuries. On appeal, this Court concluded that allowing the amended complaint would be a futile gesture because either governmental immunity or the public duty doctrine would operate to prevent the plaintiff from pursuing the county commission for liability. *Pyles*, 239 W.Va. at 889, 806 S.E.2d at 813. As such, we found no abuse of discretion in the circuit court's denial of the motion to amend. *Id.*

14

In other cases, we have reached similar conclusions regarding the futility of amending a complaint. *See, e.g., Lloyd's, Inc. v. Lloyd*, 225 W.Va. 377, 386-87, 693 S.E.2d 451, 460-61 (2010) (finding circuit court did not abuse discretion when denying motion to amend complaint because claims sought to be asserted would have been barred by res judicata, thus amendment would not have permitted presentation of case on merits); *Crum v. Equity Inns, Inc.*, 224 W.Va. 246, 256-59, 685 S.E.2d 219, 229-32 (2009) (determining circuit court did not abuse discretion when denying motion to amend complaint because newly-proposed claims could not be proven, concluding "there is no need for the [plaintiff] to waste valuable judicial resources by continuing futile litigation against the [defendant]"); *Bowyer v. HI-LAD, Inc.*, 216 W.Va. 634, 653-54, 609 S.E.2d 895, 914-15 (2004) (finding circuit court was within its discretion to rule that amendment of complaint would be futile due to indemnification clause); *Bee v. W.Va. Sup. Ct. of App.*, No. 12-1111, 2013 WL 5967045, at *4 (W.Va. Nov. 8, 2013) (memorandum decision) (concluding that circuit court did not err in denying leave to amend complaint and in dismissing case where "further litigation . . . would have been futile"); *Gassaway v. Dominion Exploration and Prod., Inc.*, No. 11-0535, 2011 WL 8193596, at *5 (W.Va. Oct. 11, 2011) (memorandum decision) (affirming circuit court's denial of motion for leave to amend complaint where additional claims were predicated upon facts that plaintiff could never establish); *accord Perkins v. U.S.*, 55 F.3d 910, 917 (4th Cir. 1995) (affirming district court's denial of motion to amend complaint where claims that plaintiff proposed to add could not withstand motion to dismiss); *see generally* 6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1487, p. 743

15

(3d ed. 2010) (recognizing that "several courts have held that if a complaint as amended could not withstand a motion to dismiss or summary judgment, then the amendment should be denied as futile"). Put simply, allowing a futile amendment to a complaint would not serve the ends of justice. *See* R. Civ. P. 15(a) (amendment to be "freely given when *justice so requires*") (emphasis added).

As set forth above, there are two types of claims set forth in the petitioners' proposed Second Amended Complaint: derivative shareholder claims and direct shareholder claims. We will separately consider whether the circuit court abused its discretion in concluding that it would be futile to allow the petitioners to amend their complaint with regard to each type of claim.

### 1. Derivative Shareholder Claims

As this Court recognized in *Manville*, "[a] fundamental principle of the law of corporations is that a shareholder derivative action is an equitable proceeding in which a shareholder asserts, on behalf of the corporation, a claim that belongs to the corporation rather than the shareholder." 231 W.Va. at 638, 749 S.E.2d at 330, syl. pt. 2. "Derivative suits enforce corporate rights and any recovery obtained goes to the corporation." *Zapata Corp. v. Maldonado*, 430 A.2d 779, 784 (Del. 1981) (citations omitted). In accordance with

16

these principles, long-standing Delaware law requires that a plaintiff must contemporaneously and continuously be a shareholder of a corporation in order to have standing to maintain a derivative shareholder action on behalf of that corporation:

> Since [the Delaware] Supreme Court's decision in *Lewis v. Anderson* [477 A.2d 1040 (Del. 1984)] ["*Anderson*"], it has been a matter of well-settled Delaware law for over three decades that stockholders of Delaware corporations must hold shares not only at the time of the alleged wrong, but continuously thereafter throughout the litigation in order to have standing to maintain derivative claims[.]

*Massey Energy II*, 160 A.3d at 497.

Delaware law mandates that, with the exception of two narrow scenarios discussed below, plaintiffs who lose their shareholder status as the result of a corporate merger will *also lose their standing to maintain a derivative suit*. Specifically, the Delaware Supreme Court has held that "[a] plaintiff who ceases to be a shareholder, whether by reason of a merger or for any other reason, loses standing to continue a derivative suit." *Anderson*, 477 A.2d at 1049; *accord Massey Energy II*, 160 A.3d at 497-98 (stockholders of Delaware corporations "will lose standing when their status as stockholders of the company is terminated as a result of a merger"); *Kramer v. Western Pac. Indus., Inc.,* 546 A.2d 348, 354 (Del. 1988) ("To have standing to maintain a shareholder derivative suit, a plaintiff must be a shareholder at the time of the filing of the suit and must remain a shareholder throughout the litigation."). The purpose of this rule is "to eliminate abuses associated with a derivative suit and to ensure that upon the merger the derivative rights pass to the surviving corporation

17

which then has the sole right or standing to prosecute the action." *Lewis v. Ward*, 852 A.2d 896, 901 (Del. 2004) ("*Ward*") (internal quotation marks, footnotes, and citations omitted); *accord Massey Energy II*, 160 A.3d at 498 (noting "[t]he continuous ownership rule has been repeatedly reaffirmed" and explaining "[t]he rationale for the rule is that a derivative claim is a property right owned by the nominal corporate defendant that then flows to the acquiring corporation by operation of a merger") (internal quotation marks, citations, and footnotes omitted).

It is wholly uncontested that upon the completion of the merger between Massey and Alpha, the petitioners ceased being shareholders of Massey. At that time, Alpha became the sole shareholder of the newly-formed corporation, Alpha Appalachia Holdings, Inc. As such, a straight-forward application of Delaware's continuous ownership rule dictates the conclusion that the petitioners lost standing to pursue the derivative claims, and that Alpha acquired the right to pursue these claims. The Delaware Court of Chancery reached this same conclusion in its Massey litigation. *See Massey Energy II*, 160 A.3d at 497 (concluding that count asserting derivative claim "must be dismissed because plaintiffs lost standing to pursue the claim by virtue of the Merger").

In an attempt to preserve their derivative standing, the petitioners' proposed Second Amended Complaint alleges facts and claims through which they seek to bring their

18

case under one of the two narrow[12] exceptions to Delaware's continuous ownership rule, specifically, the fraud exception. Pursuant to this exception, former shareholders retain derivative standing "if the merger itself is the subject of a claim of fraud, being perpetrated *merely* to deprive shareholders of the standing to bring a derivative action[.]" *Ward*, 852 A.2d at 902 (emphasis added) (quoting *Kramer*, 546 A.2d at 354, and referencing *Anderson*, 477 A.2d 1040); *accord Massey Energy II*, 160 A.3d at 498 (same quote). The Supreme Court of Delaware has explained that in "more than twenty-five years of precedent . . . [it has] consistently held the fraud exception applies only where the *sole purpose* of a merger is to extinguish shareholders' derivative standing." *Arkansas Teacher Ret. Sys. v. Countrywide Fin. Corp.*, 75 A.3d 888, 894 (Del. 2013) (emphasis added) (citations omitted). Stated differently, the fraud exception applies only when a corporate merger is pretextual. "A pretextual merger is one that was not entered into for any valid purpose; [the plaintiff] must allege there was no alternative valid business purpose for the Merger." *Globis Partners, L.P. v. Plumtree Software, Inc.*, No. 1577-VCP, 2007 WL 4292024, at \*8 (Del. Ch. Nov. 30. 2007).[13]

---

[12]*See Feldman v. Cutaia*, 956 A.2d 644, 660 (Del. Ch. 2007) (recognizing that although "narrow" exceptions exist, continuous ownership rule is a "bright line rule" that Delaware courts "adhere[] to closely") (citations omitted).

[13]A second exception recognized in Delaware law for maintaining post-merger derivative shareholder standing is "if the merger is in reality merely a reorganization which does not affect plaintiff's ownership in the business enterprise." *Massey Energy II*, 160 A.3d at 498 (quoting *Ward*, 852 A.2d at 902). The petitioners do not rely upon this exception.

19

When arguing that the merger with Alpha was effectuated "merely" to deprive them of derivative standing, the petitioners allege that Massey's financial advisor solicited proposals only from Alpha and two other companies; that a Form S-4[14] submitted by Alpha and Massey revealed that the Massey Board did not consider the pending derivative claims when negotiating the merger price; and that Alpha agreed to retain in key roles four of the five Massey officers who are named as defendants. The petitioners theorize that by installing these four officers into the newly-formed company, the officers could direct the internal investigations into the UBB explosion and could prevent Alpha from pursuing the derivative claims after the merger. Moreover, the petitioners contend that the reason the respondent directors agreed to the merger with Alpha, at that particular time and that particular price, was to obtain a buyer who would not pursue the derivative shareholder claims. The petitioners suggest that another buyer, such as Arch Coal, or even Alpha if Alpha had engaged in a hostile takeover instead of a negotiated merger, would have pursued the derivative claims and sought to hold the respondents personally liable. The petitioners also argue that information obtained during Don Blankenship's federal criminal prosecution could provide more evidence of the fraudulent nature of the merger.

---

[14]A Form S-4 is a Securities and Exchange Commission form used to register material information related to a merger or acquisition. It is available to shareholders to evaluate the merits of a proposed merger.

20

In its rejection of the applicability of the Delaware fraud exception, the circuit court's Amended Final Order referenced, inter alia, the discussion in *Manville* about the financial benefits of the merger to Massey shareholders. *See Manville,* 231 W.Va. at 646, 749 S.E.2d at 338. However, the petitioners argue that the reason they lost in *Manville* was that the *Manville* pleadings did not allege the merger was pretextual. By contrast, the petitioners' proposed Second Amended Complaint, if allowed, would allege that the merger was effectuated to deprive them of derivative standing. The petitioners argue that they are now doing what this Court concluded they had failed to do in *Manville*.

The respondents argue that it is impossible for the petitioners to prove there was no valid business purpose for the merger, thus it would be an exercise in futility for this Court to allow the filing of the Second Amended Complaint. According to the respondents, there were unquestionably valid business reasons underlying Massey's merger with Alpha. Most importantly, they contend that the merger resulted in substantial value to Massey shareholders. Alpha paid more than seven billion dollars in merger consideration, representing a twenty-seven percent premium above Massey's stock price immediately before the UBB explosion. The respondents contend that the substantial premium paid in cash and stock is why more than ninety-nine percent of Massey shares that were voted, were cast in favor of the merger. Furthermore, the petitioners concede in their proposed Second Amended Complaint that the Massey Board was instructed by its legal counsel to "assume the derivative claims would survive" the merger, and not to take the derivative claims into

account when considering the merger. The respondents argue that the petitioners' concession of this point is completely inconsistent with their claim that the merger was merely to preempt the derivative claims. Finally, the respondents argue that the petitioners' fraud claims are nothing but conclusory statements that do not state facts to support fraud with the requisite degree of particularity. *See* W.Va. R. Civ. P. 9(b) ("[C]ircumstances constituting fraud . . . shall be stated with particularity."); *accord Ward,* 852 A.2d at 905 ("the particularized pleading requirement . . . must be satisfied by a derivative complaint that seeks to invoke the fraud exception").

After carefully considering the petitioners' proposed Second Amended Complaint and the parties' arguments on appeal, it is clear to this Court that the petitioners lost derivative standing and cannot prove the fraud exception. Even if one of the respondents' reasons for pursuing the merger was to protect themselves from liability in the derivative shareholder suits, it would be impossible for the petitioners to prove that this was the *sole* reason for the merger. Even from a reading of the petitioners' proposed Second Amended Complaint, it is obvious that there were legitimate business benefits arising from the merger–most importantly, the shareholders received substantial compensation for their stock. Alpha was the highest bidder in a multi-bidder process, and an overwhelming majority of stockholder votes were in favor of this transaction. The facts as asserted by the

petitioners simply do not support the notion that the merger was "merely" a pretext to deprive them of standing in this lawsuit.[15]

Therefore, even accepting the petitioners' allegations as true, and assuming *arguendo* that the respondents committed the wrongful acts asserted in both the Amended Complaint and the proposed Second Amended Complaint, Delaware law dictates that the petitioners have lost standing to pursue the derivative shareholder claims. As the Delaware

---

[15]The Delaware Court of Chancery also concluded that pursuant to the continuous ownership rule, the plaintiffs in its Massey litigation had lost derivative shareholder standing as a result of the merger. *Massey Energy II*, 160 A.3d at 497-98. Ultimately, the Delaware court was not asked to rule upon the fraud exception because the plaintiffs therein waived the issue. Regardless, the Chancellor made the following observations in the final order granting the defendants' motion to dismiss the case:

> Plaintiffs' concession [that neither of the established exceptions to the continuous ownership rule applies] is hardly surprising. The Merger plainly was not a mere reorganization, and then-Vice Chancellor Strine expressly held [in the 2011 order], based on an extensive preliminary injunction record, that "the record in this case does not support the notion that the Massey Board's pre-Merger conduct necessitated the Merger with Alpha," and actually supported the opposite inference:
>
>> Indeed, the record supporting the inference that the Massey Board considered its stand-alone plan as being a viable option, but on the basis of the company's tarnished reputation and history of missing management projections, determined that pursuing the profitable standalone plan was not the best choice available.

*Id.* at 498 (quoting *Massey Energy I*, 2011 WL 2176479, at *30 n. 199). We find these observations persuasive.

23

Court of Chancery observed, the right to pursue the derivative claims was transferred to Alpha. *Massey Energy II*, 160 A.3d at 488 & 506-07.[16] Accordingly, we find that the circuit court did not abuse its discretion in denying the petitioners' motion for leave to amend their complaint with regard to the derivative claims.

## 2. Shareholders' Direct Claims

Next, we turn our attention to the direct claims in the petitioners' proposed Second Amended Complaint. On behalf of themselves and a putative class of other former Massey shareholders, the petitioners contend that when negotiating and approving Massey's merger with Alpha, the respondents' bad faith and breach of fiduciary duty caused them to "fail[] to obtain the highest price reasonably available for the Company[.]" The petitioners also assert that the respondents failed to disclose material information to Massey's shareholders about the terms of the merger, including a valuation of the derivative claims and information about the respondents' alleged malfeasance. According to the petitioners, it would not be a futile endeavor for the circuit court to permit them to amend their complaint to add these direct claims.[17]

---

[16]*See In re Primedia, Inc. Shareholders Litig.*, 67 A.3d 455, 476 (Del. Ch. 2013) ("Where . . . the surviving corporation is a wholly owned subsidiary of another entity, the [derivative] litigation asset of the surviving corporation comes under the control of parent.").

[17]The petitioners focus their direct claims on the respondents' conduct during the merger negotiations and when entering into the Merger Agreement. However, to the extent that the petitioners might be arguing that the safety violations at Massey's mines could support their direct claims, Delaware law would not support them. The Delaware Court of

24

Arguing in support of the circuit court's futility ruling, the respondents contend that the merger was a public, multi-bidder process that lasted for nine months and resulted in a price that was $14.33 per share higher than Arch's final bid and twenty-seven percent higher than the value of Massey's stock just before the UBB explosion. The respondents argue that the petitioners' claims about the merger consideration being too low are merely conclusory and speculative. In addition, the respondents explain that the existence of the derivative claims *was* included in the merger proxy statement and, even if they had committed wrongdoing, there is no law requiring them to admit it.

Under Delaware law, "to state a bad-faith claim, a plaintiff must show either [1] an extreme set of facts to establish that disinterested directors were intentionally disregarding their duties or [2] that the decision under attack is so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith. This is a difficult standard to meet." *In re MeadWestvaco Stockholders Litig.*, 168 A.3d 675, 684 (Del. Ch. 2017) (internal footnote and citations omitted). Moreover, "'[d]irectors' decisions must be reasonable, not perfect. In the transactional context, [an] extreme set of facts [is] required to sustain a disloyalty claim premised on the notion that disinterested directors were intentionally disregarding their duties[.]'" *Id.* (quoting *Lyondell Chem. Co.*

---

Chancery explained that the failure to exercise proper oversight and supervision of safety issues is a "prototypical example[] of corporate harm that can be pursued only derivatively." *Massey Energy II*, 160 A.3d at 503.

25

*v. Ryan*, 970 A.2d 235, 243 (Del. 2009)). "[E]ven one 'plausible and legitimate explanation for the board's decision' would negate a reasonable inference that the decision was 'so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith.'" *MeadWestvaco*, 168 A.3d at 684 (quoting *In re Alloy, Inc.*, No. 5626-VCP, 2011 WL 4863716, at \*12 (Del. Ch. Oct. 13, 2011)).

Our review of the petitioners' proposed Second Amended Complaint finds ample support for the circuit court's conclusion that allowing a challenge to the merger consideration would be an exercise in futility and a waste of judicial time and resources. The factual allegations in the proposed Second Amended Complaint detail how the respondents engaged in a bidding process; employed outside advisors; sought bids from three companies, including Alpha; and continued to negotiate with Alpha to obtain the higher price of $69.33 per share. Inasmuch as this price is a twenty-seven percent premium over the value of Massey's stock before the UBB explosion, it does not, as a matter of Delaware law, support a theory of bad faith. *See MeadWestvaco*, 168 A.3d at 686 (when considering motion to dismiss, concluding that premium of 9.1 percent was "nowhere near so egregious, so irrational, or so far beyond the bounds of reasonable judgment as to be inexplicable on any ground other than bad faith") (internal quotations marks, footnotes, and citations omitted); *In re Crimson Exploration Inc. Stockholder Litig.*, No. 8541-VCP, 2014 WL 5449419, \*23 (Del. Ch. Oct. 24, 2014) (concluding that "Plaintiffs have failed to allege facts from which this Court reasonably could find or infer that the exchange ratio here, representing a 7.7%

26

premium, satisfies th[e] demanding standard" of asserting that "price was so far beyond the bounds of reasonable judgment that it seems inexplicable on any ground other than bad faith") (internal quotation marks, citations, and footnotes omitted). Indeed, the merger and merger consideration were acceptable to the overwhelming majority of voting shareholders.

When arguing that the merger consideration was inadequate, the petitioners assert that the respondents failed to demand any value from Alpha for the acquisition of the derivative claims. However, to challenge the merger on that basis, the petitioners must be able to establish, inter alia, that "the value of the derivative claim . . . [was] material in the context of the merger." *In re Primedia, Inc. Shareholders Litig.*, 67 A.3d 455, 477 (Del. Ch. 2013). Moreover, "Delaware corporate fiduciary law does not require directors to value or preserve piecemeal assets in a merger setting. What is relevant is the value of the enterprise as a whole." *MeadWestvaco*, 168 A.3d at 686 (internal quotation marks, footnote, and citation omitted). Notably, the Delaware Court of Chancery has already discussed the many impediments and uncertainties involved in valuing the derivative claims. *Massey Energy I*, 2011 WL 2176479, at *27-29. These problems include a limited amount of available directors' liability insurance coverage, and the problem that any value Alpha might have obtained from its purchase of the derivative claims was offset by the extensive liabilities it assumed from Massey. *Id.* The Delaware court concluded that the derivative claims were not material in the context of an $8.5 billion merger. *Id.* Although the rulings of the Delaware Court of Chancery have no preclusive effect in the case sub judice, which involves

different plaintiffs and somewhat different allegations, we would be remiss if we did not acknowledge these very persuasive findings about this same corporate transaction.

We also find no error in the circuit court's conclusion that allowing the petitioners' "failure to disclose" claims would be futile. Regarding disclosure issues, Delaware law provides as follows:

> It is well established that directors of Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action. An omitted fact is material if there is a substantial likelihood that a reasonable stockholder would consider it important in deciding how to vote. To prevail on a claim of material omission, therefore, a plaintiff must demonstrate a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable stockholder. There must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable stockholder as having significantly altered the "total mix" of information made available.

*Loudon v. Archer-Daniels-Midland Co.*, 700 A.2d 135, 143 (Del. 1997) (internal quotation marks, footnotes, and citations omitted). Moreover, "it is inherent in disclosure cases that the misstated or omitted facts be identified and that the pleadings not be merely conclusory." *Id.* at 140. "For example, a pleader must allege that facts are missing from the proxy statement, identify those facts, state why they meet the materiality standard and how the omission caused injury." *Id.* at 141. If a complaint fails to allege this information, then it fails to state a claim upon which relief can be granted. *Id.*

28

A review of the proposed Second Amended Complaint reveals that the petitioners' "lack of disclosure" allegations fail to meet Delaware's standards for establishing a viable claim. The petitioners fail to allege why or how the alleged omission about the anticipated value of the derivative claims was material or caused injury to the shareholders personally. Indeed, "[p]roxy statements . . . need not disclose every detail underlying a financial advisor's analysis." *Crimson Exploration,* 2014 WL 5449419, at \*26. Finally, regarding the respondents' alleged wrongdoing, "the duty of disclosure does not require directors to admit wrongdoing. To necessitate such a disclosure would require that directors engage in self-flagellation and draw legal conclusions, in conflict with well settled Delaware law." *In re KKR Fin. Holdings LLC S'holder Litig.*, 101 A.3d 980, 1000 (Del. Ch. 2014) (internal quotation marks and citation omitted)*, aff'd sub nom. Corwin v. KKR Fin. Holdings LLC*, 125 A.3d 304 (Del. 2015); *accord Loudon*, 700 A.2d at 143 ("directors' duty of disclosure does not oblige them to characterize their conduct in such a way as to admit wrongdoing").

Accordingly, as a matter of Delaware law, we conclude that the petitioners failed to allege an "extreme set of facts" to establish that the respondents' conduct was not disinterested, or that the merger was "so far beyond the bounds of reasonable judgment that it seems inexplicable on any grounds other than bad faith." *See MeadWestvaco*, 168 A.3d at 684. As such, the circuit court did not abuse its discretion in denying the motion for leave to amend the complaint to add the direct claims.

## B. Dismissal of the Amended Complaint

With regard to the circuit court's dismissal of the Amended Complaint and, thus, the dismissal of this litigation, we note that the Amended Complaint *only* includes derivative shareholder claims. Because the petitioners no longer own Massey stock, a straightforward application of Delaware's continuous ownership rule dictates that they have lost standing to pursue a derivative shareholder suit. *See Anderson*, 477 A.2d at 1049 ("A plaintiff who ceases to be a shareholder, whether by reason of a merger or for any other reason, loses standing to continue a derivative suit."). Moreover, because the Amended Complaint was filed well before the merger was announced, the petitioners did not include any allegations in an attempt to preserve their post-merger standing under either of the rule's exceptions.

Seeking to salvage their case and delay the inevitable, the petitioners argue that the respondents' motion to dismiss was erroneously converted into a motion for summary judgment because the circuit court considered matters outside of the Amended Complaint. We reject this assertion.

To dismiss the Amended Complaint for lack of standing, the circuit court needed just one fact that was outside of the four corners of that pleading: the petitioners are no longer Massey shareholders. This is both undisputed by the parties and readily subject to judicial notice based upon the corporate merger documents on file with governmental

30

entities. "Rule 12(b)(6) permits courts to consider matters that are susceptible to judicial notice." *Forshey v. Jackson*, 222 W.Va. 743, 747, 671 S.E.2d 748, 752 (2008) (quoting Franklin D. Cleckley, et al., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 12(b)(6)[2], at 348 (3d ed. 2008)). Under Rule 201 of the Rules of Evidence, "a court is permitted to take judicial notice of adjudicative facts that cannot reasonably be questioned in light of information provided by a party litigant." *Gomez v. Kanawha Co. Comm'n*, 237 W.Va. 451, 470, 787 S.E.2d 904, 923 (2016) (quoting *Arnold Agency v. W.Va. Lottery Comm'n*, 206 W.Va. 583, 596, 526 S.E.2d 814, 827 (1999)).

Moreover, this Court has recognized that the harm arising when a court considers material extraneous to a complaint is generally that the plaintiff lacks notice that the material may be considered. *Forshey*, 222 W.Va. at 748, 671 S.E.2d at 753 (discussing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)). No such harm arises in the instant matter, where the petitioners' status as former shareholders is not only undisputed, but is central to the arguments regarding the proposed Second Amended Complaint. For all of these reasons, we find no error with the dismissal of the petitioners' Amended Complaint.[18]

---

[18]In a separate assignment of error, the petitioners contend that the circuit court violated their procedural due process rights. First, they argue that the court considered matters outside of the four corners of the Amended Complaint. As discussed above, we reject that argument. Second, they assert that the court dismissed their case without affording them notice and the opportunity to be heard. We can easily dispose of this claim. The appendix record reflects that all parties extensively briefed the issues to the circuit court.

31

## IV.  Conclusion

For the reasons set forth herein, we affirm the circuit court's November 20, 2014, Amended Final Order.

Affirmed.

---

Furthermore, although the circuit court declined the petitioners' request to enter a new scheduling order after this Court's remand on August 26, 2014, that decision was in keeping with the scope of our limited remand.  Our remand order instructed the circuit court to enter a new order containing findings of fact and conclusions of law to explain its prior ruling; we did not set aside the circuit court's prior ruling nor did we require the circuit court to hold further hearings or proceedings.  *See* Syl. Pt. 2, in part, *State ex rel. Frazier & Oxley, L.C. v. Cummings*, 214 W.Va. 802, 591 S.E.2d 728 (2003) ("Limited remands explicitly outline the issues to be addressed by the circuit court and create a narrow framework within which the circuit court must operate.").  Moreover, the circuit court permitted the parties to file proposed findings of fact and conclusions of law for the court's consideration.  We see no due process violations in this matter.

32